1                  UNITED STATES BANKRUPTCY COURT
                   EASTERN DISTRICT OF NEW YORK

2

3 ---------------------------------X
                             :

4 In Re:                     :   10-45852
                             :

5   DERRICK A. MEYLER,          :   Brooklyn, New York
                             :

6           Debtor.       :   December 1, 2010
   ---------------------------------X

7

8           TRANSCRIPT OF (10) MOTION TO DISMISS CASE
           BEFORE THE HONORABLE CARLA E. CRAIG

9              UNITED STATES BANKRUPTCY JUDGE

10
   APPEARANCES:

11

12 For the Debtor:         DERRICK MEYLER, Pro Se
                      91 Ocean Parkway, Apt. 3F

13                      Brooklyn, New York 11218

14

15 For the Trustee        MARK BROUDE, ESQ.
   Robert Geltzer:        Latham & Watkins LLP

16                      885 Third Avenue
                     New York, New York 10022

17

18

19

20 Court Transcriber:     SALLY REIDY
                     TypeWrite Word Processing Service

21                      211 N. Milton Road
                     Saratoga Springs, NY 12866

22

23

24

25

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

1  (Proceedings began at 11:21 a.m.)

2          THE CLERK:  Calling the case of Derrick Meyler.

3          MR. GELTZER:  You want appearances, Judge?

4          THE COURT:  Please.

5          MR. GELTZER:  I'm Robert L. Geltzer, the trustee.

6          MR. BROUDE:  Mark Broude for Robert Geltzer, the

7  trustee.

8          THE CLERK:  State your name for the record,

9  please.  State your names for the record.

10          MR. MEYLER:  Derrick Meyler.

11          THE CLERK:  Yes, sir, if you want to speak.

12          MR. ROLL:  Huh?

13          THE CLERK:  Yes.

14          THE COURT:  What is your name, please?

15          MR. ROLL:  Steve Roll (ph).

16          THE COURT:  Pardon?

17          MR. ROLL:  Steve Roll.

18          THE COURT:  Okay.  And are you a lawyer for Mr.

19  Meyler?

20          MR. ROLL:  No.  I'm just his witness.

21          THE COURT:  Okay.  All right.  So this is the

22  hearing on Mr. Meyler's motion to dismiss this bankruptcy case.

23  So I'll hear first from Mr. Meyler.

24          MR. MEYLER:  Judge, I didn't hear you fully.

25          THE COURT:  Beg your pardon?

1          MR. MEYLER:  I didn't hear you fully.

2          THE COURT:  I said this is the hearing on your

3    motion to dismiss this bankruptcy case.  So I will hear an

4    opening statement from you.

5          MR. MEYLER:  Yes, Judge.  I encountered an

6    accident and I went to an attorney, Ms. Pamela Elisofon, and I

7    told her that I encountered this accident and what had

8    transpired.  During that time I was also encountering financial

9    hardships.  I -- creditors were calling my home a lot.  And she

10   filed a case against what happened in the accident.  And what

11   transpired was that --

12         THE COURT:  What kind of accident was it?

13         MR. MEYLER:  I got hit in the face with a

14   basketball in Brooklyn College, and I was seriously injured.

15   She advised me to go to Macey & Aleman and take up a bankruptcy

16   matter because she couldn't loan me -- she didn't want to put

17   in for the cash advance that I asked for to keep me going.  So

18   I took her advice, I went over to Macey & Aleman, and I met

19   with Mr. Demetrios Tsatis.  And Mr. Tsatis took me and

20   consulted with me and said what you need to do is that because

21   you're disabled, after I told him everything, you're disabled,

22   under the law we will file that you're disabled and you're

23   exempt from losing your land, your -- your case, and your

24   properties.  I told him I said I don't care about the

25   properties.  And I was assured of all of this.  He said yes,

4

1    you'll go in front of the judge or the trustee and you will

2    tell them when they ask you if you're a disabled person, you

3    answer yes.  That's his briefing to me before I went to the 341

4    hearing.

5          When I went and I met with Mr. Geltzer, at that

6    time he was a trustee, I rose my hand to tell the truth, I told

7    the entire truth that morning in July.  He asked me the

8    questions except anything about disability, questions such as

9    how did you get injured, did you have blood under the eye.  I

10   recall him also asking me how many lawsuits you have.  At that

11   point I told him two.  He took the envelopes off the cases and

12   said I own these cases now.  I said I'm confused, what do you

13   mean you own the cases.  He says consult with your attorneys.

14   At the time Mr. Tsatis sent someone else to represent him.  So

15   I consulted back with my attorneys and I called my lawyer with

16   the two civil cases, and she said to me call Mr. Tsatis and

17   tell him what went -- what happened.  When I told Mr. Tsatis he

18   said he'll be in touch with me.  I had previously sent him some

19   emails stating to him over the period of time that you said to

20   me that the disability, under the disability clause or status

21   it didn't exist.  He said to me, I apologize.

22         But then I came here, make a long story short, I

23   came here the other -- about a month ago or two, and when we

24   met I told you Mr. Tsatis, I do not want him to represent me

25   because his stories keep changing, he's apologizing verbally to

1    me, and he doesn't want to give me anything in writing.  So I

2    said I would represent myself.  Then I asked you if I could go

3    ahead and file for my monies back, which I did in Small Claims

4    Court.  I just came out of Small Claims Court the other night

5    at Livingston Street.  They said to me the judge, finally after

6    three times that Mr. Tsatis, January 31st is going to be the

7    last day because he asked for adjournments, adjournments,

8    adjournments.  He finally offered me $650 back.  I'm not in

9    agreement with it.  Because I said you did not give me proper

10   disclosure, and you put me in some serious predicaments.

11   Because if I was given proper disclosure, as an educated person

12   I would have been able to make proper decisions.  That's it,

13   Your Honor.

14              THE COURT:  Well, why do you want to dismiss your

15   bankruptcy case?

16              MR. MEYLER:  I want to dismiss the bankruptcy case

17   because if I was given proper disclosure, I would be able to

18   have still been paid off my creditors and go through with my

19   cases with my attorney.  And if the cases were settled or

20   either tried I would either pay back my creditors then.

21              THE COURT:  But why don't you just want to get

22   your discharge and let the cases be settled and then pay the

23   creditors that way?

24              MR. MEYLER:  Because I never wanted to be in this

25   predicament where -- I'm learning as I go along too that these

1  bankruptcy people, they have their own agendas of how they want

2  to do things.  Like Mr. Geltzer said to me on that particular

3  day what made me very intrigued was he never brought up

4  anything in the disability that Mr. Tsatis said.  But however

5  what is happening is that it seems to be a connection with Ms.

6  Elisofon, Mr. Tsatis, and my attorney Ms. Spence, her

7  correspond with them.  All of them are corresponding within

8  themselves, which makes me say, well, wait a minute here, I

9  suffered gravely two injuries that almost left me paralyzed,

10 and I've also suffered seizures, I've had medical bills that

11 I've paid, I've always been a responsible person.  If I can

12 handle things, I can handle it within my manner, I could have

13 easily said to my creditors I will pay you back the monies over

14 the year.

15            THE COURT:  But if you -- is it that you want to

16 get an advance on these lawsuits?

17            MR. MEYLER:  Yes, Your Honor.

18            THE COURT:  Okay.

19            MR. MEYLER:  Yes.  Yes.

20            THE COURT:  And that's something you can't do in

21 bankruptcy.

22            MR. MEYLER:  Yes.

23            THE COURT:  And so that's why you want to dismiss

24 the case?

25            MR. MEYLER:  Exactly, Your Honor.

1          THE COURT:  You need the advance because you feel
2    like you need the money to live on?
3          MR. MEYLER:  Yes, Your Honor.
4          THE COURT:  All right.
5          MR. MEYLER:  It has tied me up.  I mean that's
6    when I said the predicament that they have put me in.
7          THE COURT:  Okay.  Anything else that you want to
8    say right now?
9    (Pause.)
10          MR. MEYLER:  Yes, Your Honor.  Thank you.  I
11   forget certain things that I wanted to say.  Thank you.  The
12   $20,000 that I was asking for, Mr. Geltzer and his personnel
13   has made a stop to it.  They didn't -- yeah.
14          THE COURT:  Well, and that's appropriate --
15          MR. MEYLER:  Yes.
16          THE COURT:  -- in the bankruptcy case.
17          MR. MEYLER:  Right.  So I said with me not having
18   control of my own destiny, I've never been used to living like
19   that.
20          THE COURT:  Okay.
21          All right.  Mr. Geltzer?
22          MR. BROUDE:  Your Honor, the debtor has about
23   $150,000 in debt.
24          THE COURT:  Well, at this point you have a bar
25   date set, correct?

1          MR. BROUDE:  We have set it, it's for January 18th

2   of 2011.

3          THE COURT:  So far you only have about $30,000 --

4          MR. BROUDE:  That's correct.

5          THE COURT:  -- in claims so what --

6          MR. GALLO:  The 30, it doesn't include his school

7   loans, which is approximately $50,000.

8          THE COURT:  Okay.

9          MR. BROUDE:  So it's really like 100,000 of

10  unsecured, 50 of --

11         THE COURT:  So we'll have to see how the claims

12  come in when the --

13         MR. BROUDE:  I don't know if the debtor here is

14  cognizant of the fact that all his creditors might not file

15  claims but he will get discharge of all those claims.

16         THE COURT:  Right.

17         MR. BROUDE:  But going back to the point he made,

18  he said he wanted an advance of the money to live on.

19         THE COURT:  Right.

20         MR. BROUDE:  Not to pay his creditors.

21         THE COURT:  What?  Pardon me?

22         MR. BROUDE:  Not to pay his creditors but for

23  money for his own pocket.  And --

24         THE COURT:  Well, what he -- right, he says that

25  he can't live now, he needs an advance in order to live.

1          MR. BROUDE:  Well, his --

2          THE COURT:  I think that's the point he's trying

3     to make.

4          MR. BROUDE:  Right.  I mean his -- he doesn't have

5     to pay his creditors in bankruptcy.  If he's out of bankruptcy,

6     they're going to start hounding him again.  He's going to take

7     this loan, which is going to be anywhere from 15 to 25%, which

8     is going to turn a $20,000 advance into about $100,000, in my

9     experience in these cases.  And he never paid his creditors to

10    begin with, so what's to say he's going to come back and file

11    bankruptcy again if the settlement doesn't yield the result

12    that Mr. Meyler wants here.  He's now added new creditors to

13    his case, which is going to be this advance that he takes in

14    connection with those loans in connection with his personal

15    injury actions.  There's a lot of speculation here.  These

16    creditors have never been paid to begin with, and he doesn't

17    want to pay them until the end of his case.  If that's what he

18    wants, then we should be in bankruptcy.  Because then there'll

19    be a stay.  They won't collect their debts.  Additionally, as

20    we put in our papers, a creditor wants him to be in bankruptcy

21    because he believes that he will get paid in bankruptcy his pro

22    rata share.  Outside of bankruptcy this creditor was not paid,

23    and he has no confidence that he will be paid.  And we

24    submitted that with our papers, Your Honor.

25          THE COURT:  How did -- was that affidavit just --

1    that just came in the mail to you or how did that come about?

2              MR. BROUDE:  The creditor --

3              THE COURT:  How did you come to get that

4    affidavit?

5              MR. BROUDE:  He filed a claim.  We -- there were

6    certain claims filed.  I tried to call these creditors when

7    that happens, and --

8              THE COURT:  You call them to solicit them --

9              MR. BROUDE:  Information.

10             THE COURT:  -- to write affidavits.

11             MR. BROUDE:  Yes, to say would you want the debtor

12   to dismiss this case or do you want it in bankruptcy and have

13   it proceed accordingly.  Only one responded, and it was this

14   creditor to me.  And he submitted the affidavit in support and

15   to keeping it in bankruptcy.  I don't know if he had gotten

16   even the prior notice of the debtor's motion.

17             THE COURT:  So how -- I mean what would be the way

18   to address the problem of Mr. Meyler not having anything to

19   live on in the meantime?

20             MR. BROUDE:  Well, if I look at his bankruptcy

21   schedules, his income on disability is 1313 per month.  And I

22   think that's what he's confused here.  The disability income is

23   exempt.  That's why the trustee didn't ask about it.  He knows

24   that.  That's why he didn't proceed to say I'm going to take

25   your income for your disa -- for that.  It's purely exempt,

1   it's totally exempt.  And according to Schedule J, he has about

2   $1400 a month of expenses.  So he has a negative disposable

3   income, which I believe is manageable, of just $87 a month.

4   It's not -- there's not a huge discrepancy here.

5          And additionally, Your Honor, if we go back to the

6   PI actions, they've just begun.  He hasn't even been deposed in

7   those actions, they haven't wended their way through state

8   court. I've spoken to the personal injury counsel.  It could be

9   years before these cases go to trial, be settled, and that's an

10   accurate statement by the personal injury counsel.  Because

11   we've seen those cases before, and they take years to wend

12   their way through the courts.  And also with respect to those

13   actions, personal injury counsel is of the opinion that any

14   advance given to the debtor will hurt those cases.  Because

15   then the defendants will know that they want to settle to stop

16   the interest on those cases.  There's going to come a point

17   where Mr. Meyler's going to say, wow, you gave me $20,000, now

18   it's $100,000, if we don't settle this this hundred's going to

19   turn into a 120 and it's going to keep escalating.  And the

20   defendants will not settle, they'll say okay, we'll just delay,

21   delay, delay.  And personal injury counsel has told me that and

22   has written a letter to that effect to the trustee, that they

23   believe it would prejudice the personal injury actions in this

24   matter.

25          THE COURT:  Well, would it not -- would it be

1 possible, depending on the amount of claims that are filed, to

2 get a loan in an amount that would pay off all of the claims

3 and provide something for Mr. Meyler that would -- so that that

4 could, that would address the concern of whether the creditors

5 will be paid.

6                 MR. BROUDE:  That's about $150,000.

7                 THE COURT:  But we don't know where the claims are

8 going to come in, right?

9                 MR. BROUDE:  That's correct.

10                 THE COURT:  Right now I'm seeing 30,000.

11                 MR. BROUDE:  That's correct, Your Honor.  I don't

12 believe these lenders will loan money once they see a

13 bankruptcy.  That's --

14                 THE COURT:  Well, with the trustee's consent they

15 might.

16                 MR. BROUDE:  But what happens --

17                 THE COURT:  They couldn't do it without the

18 trustee's consent.

19                 MR. BROUDE:  Right.

20                 MR. GELTZER:  May I for a moment, Your Honor?

21                 THE COURT:  Yes, Mr. Geltzer.

22                 MR. GELTZER:  Judge, what I'm somewhat concerned

23 about is even -- you know, it's highly unlikely that cases get

24 tried, personal injury cases get tried in state court.

25 Settlement is far the more usual course by which they proceed.

1    When it comes --

2                 THE COURT:  Can you be closer to the microphone?

3    It's hard to hear you.

4                 MR. GELTZER:  Oh.  I'm sorry.  It's far more usual

5    that personal injury cases get settled than tried in state

6    court.  When that day comes --

7                 THE COURT:  Right, trial is unusual.

8                 MR. GELTZER:  Trial is very unusual.  And I can

9    attach a far greater degree of rationality to a settlement than

10   perhaps even the debtor who's so personally involved in it can.

11                THE COURT:  What --

12                MR. GELTZER:  So that --

13                THE COURT:  What do you mean by that?

14                MR. GELTZER:  Sometimes plaintiffs think they have

15   the most wonderful case based upon liability and damages, but

16   that may not be the case.  And sometimes I have authorized

17   settlements, and whether Your Honor or another bankruptcy judge

18   has approved them even contrary to what the debtor wanted.

19   Because I impose a degree of rationality as to what's in the

20   best interest of creditors while at the same time looking at

21   the best interest for the debtor.  In these cases the

22   estimation of the damages is about a total of about a half a

23   million dollars, but then again no depositions have even been

24   taken in the underlying personal injury cases.  That could

25   change.  It could change by one statement of one witness as to

1    what happened.  They're in their early stages.  I just -- I

2    don't know how much I'm encumbering if I were to agree to let

3    them take a post-petition loan.

4                    THE COURT:  But my point is --

5                    MR. GELTZER:  I don't know if it's in the

6    debtor's interest.

7                    THE COURT:  But, Mr. Geltzer, my point would be,

8    the question I was asking is we -- depending on where the level

9    of -- we would have to wait until the bar date passes.

10                    MR. GELTZER:  Right.

11                    THE COURT:  We would see how many claims, what the

12    total amount of claims that have been filed.

13                    MR. GELTZER:  Right.

14                    THE COURT:  You would I suppose then have to add

15    the -- even if the student loan claim had not -- even if they

16    hadn't filed a proof of claim you'd still have to look at that.

17                    MR. GELTZER:  If they're not dischargeable.

18                    THE COURT:  To think of about that.  Although you

19    wouldn't have to think about it in the context of the

20    bankruptcy, correct?  They wouldn't be entitled to participate

21    in the distribution.

22                    MR. BROUDE:  That's correct.

23                    MR. GELTZER:  All right.  But they would still be

24    going after him.

25                    THE COURT:  That's true, that's right.  So what

1  you could do is, I suppose, see where the claims come in and,

2  if there in fact is $500,000 possibly available as a recovery,

3  if the debtor really wants to borrow, to take an advance on

4  that to get money now, if he's able to borrow enough to pay all

5  the creditors out, it could be paid out and he could get a

6  discharge.

7            MR. GELTZER:  If he can pay all the creditors in

8  full and administrative costs, that would be fine, but --

9            THE COURT:  Well, there isn't going to be all that

10  much in administrative --

11            MR. GELTZER:  No.

12            THE COURT:  -- costs, presumably.

13            MR. GELTZER:  No.  But there's also the PI

14  attorneys who are going to get a third and --

15            THE COURT:  Well, they'll get a third of any

16  recovery.  They wouldn't necessarily have to be paid in the

17  context of a -- you could dismiss -- couldn't you fully

18  administer this case, pay the creditors with the proceeds of a

19  loan and leave, abandon -- I mean and then the personal injury

20  action belongs to Mr. Meyler, and the PI attorneys get whatever

21  they get?

22            MR. GELTZER:  Yes, Your Honor.  The thing is with

23  them taking their third and with whatever he gets, he may at

24  the end of the day -- after these creditors are paid in full

25  with interest, he may have put himself into more debt with the

1    loan he took out --

2                  THE COURT:  Yes, I under --

3                  MR. GELTZER:  -- in order to do that.

4                  THE COURT:  I understand that.  And that is a

5    concern.  But wouldn't he --

6                  MR. GELTZER:  And then be back here.

7                  THE COURT:  Wouldn't he have to be -- wouldn't

8    that have to be something for him to consider for himself?

9                  MR. GELTZER:  You're right, yes, Your Honor.

10   Certainly it's his decision whether he wants --

11                 THE COURT:  I don't --

12                 MR. GELTZER:  -- to assume that risk.

13                 THE COURT:  -- know how severe his need for money

14   in the present, at the --

15                 MR. GELTZER:  I'm sorry?

16                 THE COURT:  I'm not sure how badly he needs money

17   now.

18                 MR. GELTZER:  I understand, and I'm not

19   unsympathetic.  I'm trying to look down the road that here we

20   have a debtor who says he had an attorney who either didn't

21   explain all the ramifications correctly or he the debtor didn't

22   understand them.  I can tell you at the 341 meeting I was very

23   clear and instructed the personal injury attorney to make it

24   even clearer with respect to the personal injury actions.  And

25   the --

1          THE COURT:  The personal injury attorney attended

2    the 341 meeting?

3          MR. GELTZER:  He was presented by counsel.  I

4    don't know if it was this particular --

5          MR. BROUDE:  No.

6          THE COURT:  It was probably his bankruptcy lawyer,

7    right?

8          MR. BROUDE:  It was the bankruptcy lawyer.

9          MR. GELTZER:  Did I say the PI attorney?

10          THE COURT:  Yes, you did.

11          MR. GELTZER:  I'm sorry, I'm sorry.  And the

12    debtor didn't quite understand that, and so now we're putting

13    that debtor who has demonstrated somewhat of a lack of

14    understanding in the position to decide whether after going

15    through a bankruptcy that's going to be on his record for a

16    long time, put him in a position of borrowing more money at an

17    effectual interest rate of 25% thereabouts or more and perhaps

18    be a debtor again.  I'm really not trying to hurt the debtor,

19    I'm really trying to help him and try to help him foresee the

20    consequences of that action whereas if we stay in bankruptcy

21    he's getting by, he's getting by tightly but he seems to be

22    getting by.  If he stays in bankruptcy, if we settle the

23    personal injury cases, we'll pay them in full whatever -- if

24    there is a surplus, certainly he gets the surplus, and he can

25    be on his way.  I think it's better for him, it's better for

1    creditors.  I really do think it's better for him.

2         THE COURT:  What relevance, if any, do you think

3    there is to Mr. Meyler's allegation that his attorney

4    incorrectly informed him about the ramifications of filing for

5    bankruptcy?

6         MR. GELTZER:  I don't want to speculate as to

7    their conversation when I wasn't there.  However, I can say

8    this.

9         THE COURT:  But I'm saying -- assuming that what

10   he's saying is accurate, and I'm not saying that I necessarily

11   believe that but assuming that it was, would that be relevant

12   in your mind?

13        MR. GELTZER:  It would not be irrelevant but it

14   would not be dispositive.  Because at the 341 meeting my

15   question in 25,000 meetings over 20 years has been to say have

16   you read these, are they true and complete, do they show

17   everything you own and everything you owe.

18        THE COURT:  But, Mr. Geltzer, by the time he's at

19   the 341 meeting with you he's already filed for bankruptcy.

20   He's saying that if he knew that he would be -- that he would

21   lose control of his personal injury action that he wouldn't

22   have filed.

23        MR. GELTZER:  And that's what I was trying to

24   respond to.  I don't know what he and his attorney -- I don't

25   know what the substance of their conversation is.  But it seems

1    to me that they did discuss it.  Because the lawsuits are

2    listed on Schedule B and there was an exemption claimed though

3    not properly on Schedule C.  The debtor does have the

4    information sheet that -- where's the -- and the information

5    sheet, which I asked him if they've read it.  It says on the

6    Chapter 7 "you may claim certain of your property as exempt

7    under law.  A trustee may have the right to take possession,

8    sell the remaining property that is not exempt," and I

9    explained that.  I instructed the attorney to explain that.

10   Can I tell you that he did?  Absolutely not.  I don't know, I

11   don't know what their conversation was.  But it seems to me

12   that this is a knowledgeable debtor.

13            THE COURT:  Would I need to get Mr. Tsatis here in

14   to testify about what he did tell the debtor?

15            MR. GELTZER:  I would have no problem with that,

16   certainly.  I can't tell you what they said between themselves.

17            THE COURT:  Right.  So why wouldn't we wait and

18   see where the claims -- how the claims come in and, you know,

19   what level of claims are filed and see whether if the debtor

20   would be able to get a loan to pay those amounts out --

21            MR. GELTZER:  That's fine. In fact we --

22            THE COURT:  -- at the present time?

23            MR. GELTZER:  Mark had called Mr. Meyler several

24   times in the last couple days to try to get his consent to

25   adjourn this to a date past the bar date for that very reason,

1   but we didn't get a return call from him.  This is a debtor

2   though who has participated in this bankruptcy process.

3              THE COURT:  Right.

4              MR. GELTZER:  It's not that he hasn't shown up,

5   it's not that matters haven't been explained to him, it's not

6   that he hasn't signed papers.  And I'm not looking to punish

7   him.  He's done nothing that's wrong.  But it seems like this

8   has been explained to him and moreover it seems like this is

9   better for him.  Whatever you'd like to do, Your Honor, you --

10             THE COURT:  So I guess your position would be that

11  having filed the bankruptcy, we have to take into consideration

12  the interest of creditors and therefore would not be able just

13  to dismiss the case without there being some mechanism in place

14  to assure that the creditors are going to be paid.

15             MR. GELTZER:  Well, it's --

16             THE COURT:  Is that your view?

17             MR. GELTZER:  -- my position because that's the

18  law.

19             THE COURT:  Beg your pardon?

20             MR. GELTZER:  That's my position because that's

21  the law that their interests have to be taken into account.

22             THE COURT:  Right.

23             MR. BROUDE:  Your Honor, if I can just make one

24  comment.  You had suggested let's look at the bar date, see

25  what the claims are.

1          THE COURT:  Right.

2          MR. BROUDE:  And today it's $30,000.  And say the

3     bar date passes and it's $30,000 and for some reason he wants

4     to do a structured dismissal to pay those 30.  The other 65 in

5     that it's dismissed can go after him.

6          THE COURT:  The other --

7          MR. BROUDE:  The other creditors.

8          THE COURT:  I'm talking about him getting a

9     discharge.  Why wouldn't he be able to get a discharge?

10          MR. BROUDE:  Well, if he gets a discharge, then

11     why are we dismissing the case, why don't we see it to the end

12     of the bankruptcy?

13          MR. GELTZER:  The student loans aren't going to be

14     discharged.

15          THE COURT:  But he does -- the point is he wants

16     to get -- he'd have to borrow the money, wouldn't he?  The

17     point is he wants to -- he wants the money now, if I'm

18     understanding him correctly.  So he would have to borrow -- I'm

19     talking about a scenario, not a structured dismissal but an

20     administration of this case with the --

21          MR. BROUDE:  It's kind of like a more --

22          THE COURT:  -- proceed of the loan.

23          MR. BROUDE:  -- quick administration by --

24          THE COURT:  Right.

25          MR. BROUDE:  -- getting a loan.

1          THE COURT:  Right.

2          MR. BROUDE:  I'm not sure what the benefit to the

3   debtor would be.

4          MR. GELTZER:  You know what --

5          THE COURT:  The benefit is he gets the money now.

6          MR. GELTZER:  What I'm going to say to you now is

7   I'm contradicting what I said a few moments ago in that on one

8   hand this debtor seems to know what this process is about.  On

9   the other hand the debtor kind of has intimated to us that he

10  wants some money from us.  We obviously have no money to give

11  him, to lend to him.  In addition, it seems that the debtor

12  wants to be out of bankruptcy so that he can, as he puts it, be

13  his own -- take care of his own destiny.

14         THE COURT:  Right.

15         MR. GELTZER:  On the other hand he wants to keep

16  these creditors at bay.

17         THE COURT:  Well, if he gets a discharge he will

18  have succeeded in that goal.

19         MR. GELTZER:  Not with respect to the student

20  loans though.

21         THE COURT:  Not with respect to the student loans,

22  but that's the case, you know, in or out of bankruptcy.

23         MR. GELTZER:  That's true.  But if it's in

24  bankruptcy and the personal injury actions pay off, we can pay

25  off everybody.  I don't know what else to tell you, Judge.

1          THE COURT:  But that wouldn't -- the debtor's

2     interest here is in getting a discharge of his dischargeable

3     debts, correct?

4          MR. GELTZER:  Yes.

5          THE COURT:  So if he's able to do that, why

6     wouldn't that be the best resolution?  I mean I'm not saying

7     that -- at least if that's what he wants to do.

8          MR. GELTZER:  It may be.  This may all be an

9     exercise in futility.  Perhaps the Court would consider asking

10    the debtor if any of these potential lenders were willing to

11    lend him any money, what stage that was in.  Lenders don't want

12    to lend money on PI actions unless they have a reasonable

13    certainty that the PI action is going to pay off, especially

14    for someone who's in bankruptcy.  And it would seem to me -- I

15    don't know that business although I have a debtor who's in that

16    business, but it would seem to me that lenders might be adverse

17    to making a deal that early in the PI action process.

18          THE COURT:  But we don't know though.

19          MR. GELTZER:  Perhaps --

20          THE COURT:  If we're talking about claims that are

21    in the -- you know, at a relatively low level and actions that

22    are maybe worth $500,000, maybe he can borrow enough to pay

23    them off.

24          MR. GELTZER:  I have to say I don't know either.

25    I don't know where that stands.  But maybe he can tell the

1  Court.

2          THE COURT:  All right.  Mr. Meyler.

3          MR. MEYLER:  Your Honor, my witness was here when

4  the last time he said for me and Mr. Broude to work it out and

5  to send him a stipulation and to --

6          THE COURT:  I didn't say to Mr. Broude work it out

7  and that he should send you a stipulation.  I've listened to

8  the audio of that hearing.  What I said was maybe it would be

9  possible to work it out, I did not --

10          MR. MEYLER:  Yes.  Yes, Judge.

11          THE COURT:  -- tell anyone --

12          MR. MEYLER:  I apologize.

13          THE COURT:  -- that they had to do that.

14          MR. MEYLER:  Yes, maybe it's possible that you and

15  Mr. Meyler can work it out, absolutely.

16          THE COURT:  And apparently it wasn't.

17          MR. MEYLER:  Right.  Mister -- I sent Mr. Broude

18  all -- a listing of how I would go about paying all the --

19          THE COURT:  Okay.  See, Mr. Meyler, the problem is

20  once I dismiss this bankruptcy case I have no assurance

21  whatsoever that you're going to pay anybody.

22          MR. MEYLER:  And that's why I did this and showed

23  Mr. Broude, and I sent it to all the creditors.

24          THE COURT:  Right.

25          MR. MEYLER:  And according to him, he just said

1    that he got on the phone and spoke to the creditors and only

2    one responded.

3                    THE COURT:  Right, one of them said I don't want

4    you to dismiss this case.

5                    MR. MEYLER:  Exactly.  And I haven't heard back

6    anything from the creditors.  But, however, the whole purpose

7    of this is that --

8                    THE COURT:  That isn't necessarily surprising

9    given that many of them are for, you know, amounts that were

10   relatively small amounts and that they are institutional

11   creditors.  It's not that surprising that we wouldn't hear back

12   from them.  That doesn't mean, I don't interpret their silence

13   on this or their failure to object as being consent to the

14   dismissal of the case.

15                   MR. MEYLER:  Okay.  I just want to say Mr. Geltzer

16   has also stopped the loan advance.  Because he sent me a

17   letter, also sent Ms. Spence, my attorney --

18                   THE COURT:  Well, but he did that rightly so.

19   Because he wasn't -- you can't take an advance for yourself on

20   these lawsuits and for your own use.  You're taking -- these

21   are, the lawsuits now are an asset that are supposed to be used

22   to pay your creditors.  In a bankruptcy case you get a

23   discharge, meaning that your creditors can't pursue you anymore

24   for dischargeable debts.  Your student loans, that's a

25   different thing, they are not dischargeable unless you can show

1   that you are entitled to a hardship discharge, which maybe you

2   would be.  You might be entitled to that, I don't know.  But

3   you'd have to -- to get that you would have to start an action

4   in this court and get it to seek a declaration that you're

5   entitled to a hardship discharge of your student loans.  But in

6   the absence of that you have to pay your student loans and your

7   other creditors or your other creditors, the debts are

8   discharged.  But the price you pay for that is that whatever

9   assets you have, which in this case would include your personal

10  injury action is then an asset that has to be administered by

11  the trustee for the benefit of your creditors.  So that means

12  that for you to take a loan out for your own personal use that

13  would be secured by that is not something you'd be allowed to

14  do during the bankruptcy case.

15       Now, maybe your best course of action would be to, if you

16  want to in fact to do this, maybe you would be -- maybe we

17  should see where the bar date order comes in.  Maybe you're

18  better off pursuing your student loan -- maybe you're better

19  off seeking a discharge of your student loans in the bankruptcy

20  case, and either waiting for the outcome of the personal injury

21  action or if the other creditors are in a small enough amount

22  that they could be paid off through a loan, then getting a

23  loan.  But I think what Mr. Geltzer is saying, and rightly so,

24  is that to get a loan like this may not be in your best

25  interest long-term.  The interest rate is very high.  You could

1  find that you need to go back into bankruptcy after this is all

2  over.  You may end up with nothing whereas if -- out of the

3  student loans except what -- out of the personal injury action

4  other than what you get through the loan.  Whereas you might

5  find that you have a much bigger recovery at the end of the day

6  if you just allow, if you allow these student loans -- I'm

7  sorry, I keep saying student loan when I mean to say personal

8  injury -- if you allow these personal injury actions to be

9  pursued to a conclusion.

10      MR. MEYLER:  Okay.  Then if I allow Mr. Geltzer to

11  pursue the personal injury matters --

12      THE COURT:  Yes.

13      MR. MEYLER:  -- that's not what I wanted.  I

14  wanted the entire thing dismissed.  I wanted to have control

15  myself to whatever monies that I would do to handle my

16  business.

17      THE COURT:  Right.

18      MR. MEYLER:  I have been, I have always been a

19  responsible person.  I know you don't know me, Your Honor, but

20  if anyone were to look up my record --

21      THE COURT:  But why did you file for bankruptcy

22  then?

23      MR. MEYLER:  Because I was duped by Mr. Tsatis.

24      THE COURT:  But you must have had debts, you must

25  have had -- why'd you go to see Mr. Tsatis then?

1        MR. MEYLER:  I tell you why.  My first attorney on

2   the case, Ms. Elisofon, she said to me when I asked her for the

3   cash advance at the time, she said the best thing to do is to

4   file bankruptcy.  Because Discover Card had taken me, threaten

5   to take me to court for the monies that I had borrowed because

6   they said that I need to repay them.  I explained to them that

7   I was in an injury and I wasn't able to make my payments.  So I

8   had all this outstanding, I had medical bills prior to, all

9   these things.  Everything was just pouring down on me.  A

10  financial burden, hardship like you said.  I went and consulted

11  with people who have intelligence and expertise in certain

12  areas.  Ms. Elisofon then was the one who said that she filed

13  the case incorrectly.  Mr. Tsatis, who you said, you know,

14  there's a possibility of you even -- if you were to order him

15  to come and testify, he sent me a letter saying in his letter

16  also that he's willing to give me a refund and he's -- you

17  know, I'm just -- I've been overwhelmed.  To answer your

18  question, I filed bankruptcy because I was overwhelmed with the

19  phone calls, the headache, I was recovering, I was suffering,

20  and financially I lost my job, I lost everything.  And then to

21  understand that when I met with Mr. Geltzer he's telling me I

22  own your cases now.

23        THE COURT:  But that is what happens in bankruptcy

24  as I just explained to you.  The trustee then becomes in charge

25  of administering your assets for the benefit of your creditors.

1   In exchange for that you get a discharge so that they can't

2   pursue you anymore.

3              MR. MEYLER:  But I didn't get proper disclosure

4   from Mr. Tsatis to make --

5              THE COURT:  You know, I am not sure --

6              MR. MEYLER:  -- proper decisions.

7              THE COURT:  I don't -- nobody has really discussed

8   the law in that area, but I'm not -- first of all, I don't

9   think that I would -- I believe -- I don't believe that Mr.

10  Tsatis necessarily believed that he told you the wrong thing.

11  I would have to hear from him in order to --

12             MR. MEYLER:  I have an email from --

13             THE COURT:  -- in order to -- what's that?

14             MR. MEYLER:  I have a email that shows that I was

15  in correspondence to him.  And I said to him why have you not

16  filed under the disability law as you said?  And he never did.

17             THE COURT:  Well, there is -- I don't know what

18  disability law you're talking about.

19             MR. MEYLER:  That's what -- I want to discuss

20  where I want a discharge on that grounds, that there was no

21  disability --

22             THE COURT:  Oh, but see --

23             MR. MEYLER:  -- that --

24             THE COURT:  -- I'm not necessarily, I don't

25  necessarily believe that he told you that your lawsuit would be

1   exempt in toto because of the fact that you're disabled.  I

2   don't know that -- I would have to ask him whether he said that

3   or not, and then I would have to assess his credibility and

4   yours.  Because that, as far as I understand it, that is not

5   the law and I've never heard that.  I find it hard to believe

6   that a lawyer would tell you that.

7             MR. MEYLER:  Well, Your Honor, that is what

8   happened.  I just want it discharged based on all these things

9   that I said.

10            THE COURT:  But the problem is, like I said, if I

11  just, if I were to just say okay, fine, your case is dismissed,

12  good-bye, then I have -- there is -- I am obligated to take

13  into account the interests of your creditors.  Your creditors,

14  which we know, we have at least $30,000 worth of creditors.

15  Then we have your student loan debt.  And I have no assurance

16  that they would be paid.  There's no way for me to have any

17  assurance that you're going to pay them.  You tell me well, I

18  will, but I don't know you will, I don't know that you will.

19            MR. MEYLER:  And --

20            THE COURT:  I have no way of ensuring that.

21            MR. MEYLER:  That's why --

22            THE COURT:  Unless it's done in the context either

23  in the form of an order in the context of this bankruptcy case

24  or unless you get a loan that then is paid out and then fund

25  distributions that would be made by the trustee in this

1    bankruptcy case.

2              MR. MEYLER:  And that's what I said in my letter

3    certified mail directing him with such.  And I don't want any

4    money, I want the creditors to be paid first.

5              THE COURT:  But you directed who, the --

6              MR. MEYLER:  Mr. Geltzer and Mr. Broude.

7              THE COURT:  Right.  Well, but that's right.  But

8    we can't -- once we dismiss this case they're out of the

9    picture, they're not involved anymore.  Then you go ahead and

10   do whatever you want to with the personal injury action.  It

11   could take a number of years before it yields any results.  And

12   I have no way of knowing whether or not you paid your creditors

13   or not.  So in the context of the way this case is now, the

14   facts of this case now, it's hard for me to see that it's in

15   the best interest of your creditors for this case to be

16   dismissed.

17             MR. MEYLER:  And I also contacted Ms. Spence and

18   sent her the said letter and ordered her that no money should

19   come to me until all the creditors are paid and remittance me

20   the balance.

21             THE COURT:  Well, if that's what you want to do,

22   then the case should probably remain in bankruptcy.

23             MR. MEYLER:  But then it's -- they --

24             THE COURT:  And you could change your instructions

25   to Ms. Spence anytime you want to.

1          MR. MEYLER:  But here's what happens now.

2          THE COURT:  And Ms. Spence is going to be --

3          MR. MEYLER:  They --

4          THE COURT:  Ms.  Spence is not going to be able to

5    pay your --

6          MR. MEYLER:  There's a con --

7          THE COURT:  Let me continue.  You tell Ms. Spence,

8    who is your personal injury lawyer, that you want her to pay

9    your creditors before she pays you.  She's not in that

10   business.  That's not her -- her job is not to write checks to

11   different -- to creditors in amounts that you indicate.  She

12   would give you -- she would say that's not my job, I'm your

13   personal injury lawyer, whatever recovery we receive, that

14   would go to you and it would be up to you to take care of that.

15   I have no assurance that that's going to be done.  That's what

16   bankruptcy accomplishes is that it provides a structure where

17   we know that the creditors will get paid.  And you get a

18   discharge.

19         MR. MEYLER:  There seems to be a conflict with Mr.

20   Geltzer.  Because the conflict is this.  He doesn't want to

21   give me a loan so that I can live and do what I need to do to

22   survive.

23         THE COURT:  Right.  Well, he --

24         MR. MEYLER:  And --

25         THE COURT:  -- that's what -- he won't do --

1  that's not -- that can't happen in the bankruptcy.

2       MR. MEYLER:  But that's what he's doing.

3       THE COURT:  Right, he -- I'm saying he cannot --

4  you would not -- in a bankruptcy -- as long as this bankruptcy

5  case is going on you cannot get a loan for yourself personally.

6  That can't happen.

7       MR. MEYLER:  And this is why I'm saying from the

8  beginning, Judge, that Mr. Tsatis by not giving me proper

9  disclosure in all these things lead me here today --

10      THE COURT:  I'm not sure I --

11      MR. MEYLER:  -- to cause for dismissal.

12      THE COURT:  Number one, I'm not sure I believe

13  that.  As again I would have to hear from Mr. Tsatis I think in

14  order to assess whether that's credible or not.  And, number

15  two, even if it were true, that might give you some kind of a

16  claim against Mr. Tsatis but I'm not sure that it changes the

17  fact that I need to take into consideration the interests of

18  your creditors.

19      MR. MEYLER:  And in the meantime I'm tied up like

20  this, Your Honor.  And what do I live on, 1200 a month?  He

21  claimed it was 1300.  I'm paying $110.50 for Medicare now, so

22  it's 1200 a month I get from SSD, not 1300 on SSD.  I have a

23  total disability.  I've been paying a aide to help me and all

24  these things.  At the end of the month I have nothing.

25      THE COURT:  Well, here's what you might be able to

1   do is you might -- I mean if you could figure out how to live

2   on your SSD, you might be better off in the long run, because

3   you might -- the amount that you would have to pay in interest

4   to a lender would be very, it's very high.  I think these

5   lenders charge you -- you'd have to get all the information

6   from them but they tend to charge very high rates of interest,

7   the lenders who lend on personal injury actions.  So it might

8   be, if you could scrape by and wait until you actually get a

9   payout from your personal injury action, that that would maybe

10  be in your best interest possibly.  But that's, again I think

11  that's probably the decision you have to make.

12              MR. MEYLER:  I know.

13              THE COURT:  But another possibility would be for

14  you to, if you can get a loan to pay off your creditors, to do

15  that and then let Mr. Geltzer distribute those monies in this

16  bankruptcy case, you get a discharge.  And in terms of your

17  student loans, if you in fact are disabled you might be

18  entitled to a hardship discharge, and that's something that you

19  should look into.  You can -- and that's only something you can

20  get in this bankruptcy case.

21              MR. MEYLER:  Yes, Your Honor.

22              THE COURT:  If you dismiss this case you get --

23  there's no discharge of your student loans or anything else.

24              MR. MEYLER:  I want a discharge, Your Honor.

25              THE COURT:  Well, the only way you can get a

1    discharge is in the bankruptcy.

2              MR. MEYLER:  Yes.

3              THE COURT:  And if this bankruptcy case is

4    dismissed you don't get a discharge.

5              MR. MEYLER:  Yes, I want that.

6              THE COURT:  Okay.  So that's what you would have

7    to -- you can't dismiss your bankruptcy case and get a

8    discharge.  Once you -- in order to get a discharge, for you to

9    get a discharge this case has to be administered.  So the only

10   question is how it would be administered.  Whether it would be

11   administered through -- whether you would wait for the personal

12   injury action to pay off or whether you would, if you can, get

13   a loan to pay your creditors before that.  So but either -- but

14   you can't dismiss the case and get a discharge.  And again as

15   far as your student loan is concerned you might need to look

16   into whether you can get a hardship discharge.  But if there's

17   going to be money, I guess if there's going to be money at the

18   end of the day, the personal injury -- the student loan people

19   are going to be entitled to receive that.

20             MR. MEYLER:  I definitely need a hardship

21   discharge, Your Honor.  I've been overwhelmed.  The hardship

22   discharge is the rightful way to go.

23             THE COURT:  Yeah, but only with the -- but even --

24   I think -- I hope I didn't -- I'm not saying something that is

25   giving you --

1              MR. MEYLER:  Your Honor --

2              THE COURT:  -- the idea that you --

3              MR. MEYLER:  -- can I sit down because my back

4    hurts.

5              THE COURT:  -- that you're entitled to more than

6    you are.  The student loan lender would be entitled to

7    participate would be entitled to be paid out of the proceeds of

8    your PI action like all your other creditors.

9              MR. MEYLER:  Yes.  That's what I want, Your Honor.

10   Yes, Your Honor.

11             THE COURT:  So, in other words, you would like to

12   stay in bankruptcy then?  Just a minute, please.

13                      [Pause in proceedings.]

14             MR. MEYLER:  Can I have Mr. Roll just say that?

15             MR. ROLL:  Your Honor, he's saying that you don't

16   understand his theory as you're speaking.  He said he don't

17   mind this case administrated by whoever it is (indiscernible)

18   is kind of discharge.  But at the same time you want him to

19   monitor his case before (indiscernible).

20             THE COURT:  Okay, I'm not following you.  Can you

21   repeat that?  I didn't understand that.  I'm sorry.

22             MR. ROLL:  Maybe should I come up front?

23             THE COURT:  Yes, that would be helpful.  I think I

24   can hear you better that way.

25             MR. ROLL:  Your Honor, he's saying that he is

1  overwhelmed by what is happening to him.

2          MR. GELTZER:  I'm sorry, I can't hear him, Your

3  Honor.

4          THE COURT:  Okay.  Speak into the microphone.

5          MR. ROLL:  He's saying that he's overwhelmed with

6  all that is happening.  As you stated, he said he don't mind

7  before you get the settlement money that is discharged from --

8  it's not that he's totally discharged, he just want to be these

9  people off his back, he'd rather settle for the -- what do you

10 call this thing?

11         THE COURT:  I'm not -- I don't know what you're

12 saying, I'm sorry.

13         MR. ROLL:  What you stated just now, he's saying

14 that he'd rather go with that and wait for the settlement

15 money.

16         THE COURT:  Okay.  So that means that that would -

17 - so in other words am I understanding correctly you want to

18 stay in the -- that you don't want to dismiss the bankruptcy

19 case?

20         MR. ROLL:  He want to dismiss it, Judge, but at

21 the same time he's saying that if he could get all these people

22 off his back and --

23         THE COURT:  But he can't do both of those things.

24 If you dismiss it, if he dismisses -- if this were dismissed,

25 which I'm not sure I would allow it to be dismissed, but

1    assuming that I would, that it could be dismissed, he would not

2    get a discharge, these people would not be off his back, he

3    would have no relief from his creditors at all, any of them.

4             MR. ROLL:  Okay.  But what about the one that they

5    have mentioned about the hardship discharge?

6             THE COURT:  Well, that's -- absolutely, that one

7    would not -- a student loan debt is not entitled to be

8    discharged in bankruptcy unless you are qualified for a

9    hardship discharge.

10            MR. ROLL:  And what about if he --

11            THE COURT:  And even -- but I'm saying that even

12   if he were able to get a hardship discharge, if he's got --

13   that the proceeds of the personal injury action are sufficient

14   to pay it, they would still be entitled to participate with

15   other creditors in that.

16            MR. ROLL:  What does he do now?  Because he wants

17   some form of relief from these people.

18            THE COURT:  Well, you have to either -- I think

19   he's going to --

20            THE CLERK:  You have to step away from the

21   microphone.

22            MR. ROLL:  Oh, away from it?

23            THE COURT:  Okay.  He's going to -- in order to

24   get a discharge he's going to have to -- this bankruptcy case

25   has to be administered.

1          MR. ROLL:  Okay.  He understand that part.

2          THE COURT:  Okay.  So he can't dismiss this case

3   if he wants the discharge.

4          MR. ROLL:  So the part that you mention about --

5          THE COURT:  He would either have to get -- he

6   would either have to wait in bankruptcy till the personal

7   injury action settled and then allow that -- and then the

8   trustee would administer those funds and pay his creditors.

9          MR. ROLL:  And what about if he don't want to

10  wait?

11         THE COURT:  If he doesn't want to wait, he would

12  have to see if he can get a loan --

13         MR. ROLL:  Yes, Your Honor.  Yes, Your Honor.

14  He --

15         THE COURT:  -- in an amount that would be

16  sufficient to --

17         MR. ROLL:  Yes, Your Honor, he asked for that

18  amount that he want no money, he contact his personal PI

19  lawyer, stating that he wanted to pay off Mr. Geltzer, whoever,

20  and they stopped him from getting it.

21         THE COURT:  Well, that's right.  He can't do that

22  in bankruptcy, at least not unless the trustee consents to it.

23  Let me see if I can explain this.  Mr. Meyler cannot take money

24  out, cannot borrow money using his personal injury action as

25  security for his own use in this bankruptcy case.

1       MR. ROLL:  I understand, Your Honor, but --

2       THE COURT:  He could, if the trustee were to

3  consent to it, see if he could borrow enough money to pay all

4  of his creditors.

5       MR. ROLL:  But you mentioned a part with the

6  student loan, Your Honor.

7       THE COURT:  Okay.  And I'm afraid I said something

8  about the student loan that has misled you.  A student loan is

9  not discharged at all ever --

10      MR. ROLL:  Yes, Your Honor.

11      THE COURT:  -- in bankruptcy except if you're

12  entitled to a hardship discharge.

13      MR. ROLL:  Yes.

14      THE COURT:  But even if you would be entitled to a

15  hardship discharge they would still be entitled to receive the

16  amount of the -- their share of settlement in the personal

17  injury action.

18      MR. ROLL:  Mr. Meyler contacted her personal, his

19  personal attorney, his personal attorney to pay them off, and

20  he told the lawyer that he don't want no money, he wants to pay

21  off both these creditors.  And I don't know what happened, and

22  that's what he wanted.  He don't want no personal money for

23  himself.  He told his lawyer that.

24      THE COURT:  Well, then why doesn't he just -- why

25  does he -- if he doesn't want personal money, why does he want

1    to dismiss the case?  It makes no sense.

2              MR. ROLL:  Can I say something?  What Mr. Meyler

3    is trying to explain --

4              THE CLERK:  You have to speak into --

5              MR. ROLL:  He wanted the money for personal but

6    now he changed his mind to pay them off because he's tired of

7    them.  That's what --

8              THE COURT:  Okay, I understand that.  But that may

9    -- he can't -- the only way he could do -- well, first of all,

10   he would have to wait until the bar date passes to see what his

11   creditors are.  Then he would have to see whether it would be

12   possible to borrow an amount of money that would be sufficient

13   to pay them off.

14             MR. ROLL:  Yes, he attempted that and the trustee,

15   as he said, they got involved.  And he wrote a second letter of

16   stipulation stating that he don't want no personal money for

17   himself, he'd rather pay off --

18             THE COURT:  Well, but that doesn't make any sense.

19   That doesn't make any sense.  The only reason to do this from

20   Mr. Meyler's point of view would be if he needs money now and

21   needs to borrow money for himself personally now that he

22   wouldn't be able to do in bankruptcy.  Okay?  It makes no sense

23   to borrow money in an amount that's sufficient only to pay his

24   creditors and then to be encumbered, with his personal injury

25   action be encumbered by that debt.  See, do you understand that

1    if you borrow, let's say -- let's say you borrow $50,000 now.

2    You're going to have to -- when the personal injury action

3    settles you're going to have to pay a lot more than $50,000 --

4                    MR. ROLL:  Understood but --

5                    THE COURT:  -- to --

6                    MR. ROLL:  -- plus with interest.  I understand.

7                    THE COURT:  Right, interest at a very high rate.

8    I think they tend to charge, you know, way into the double

9    digits.

10                   MR. ROLL:  I understood.  But he's saying, Your

11   Honor --

12                   THE COURT:  So, in other words, you would end up -

13   - so that instead of waiting to get that money you're going to

14   end up having to pay maybe twice that amount or more.  Or you

15   may not see any benefit from --

16                   MR. ROLL:  Your Honor --

17                   THE COURT:  -- your personal injury action at all.

18                   MR. ROLL:  Your Honor, I under --

19                   THE COURT:  So if to borrow that money now to pay

20   the creditors and to not take anything out personally makes no

21   sense.  There's no logic to that at all.  You're better off

22   staying in the bankruptcy case.

23                   MR. ROLL:  Yeah, what Mr. Meyler is saying, Judge,

24   he wants these people off his back.

25                   MR. MEYLER:  Your Honor, Mr. Geltzer sent me a

1  trustee's affirmation and they're proposing the debtor's motion

2  to dismiss description case.

3          THE COURT:  Right.

4          MR. MEYLER:  I'm going to read everything from it.

5          THE COURT:  You don't have to read it to me, I've

6  read it already.

7          MR. MEYLER:  Your Honor --

8          THE COURT:  I've read it --

9          MR. MEYLER:  And I spoke --

10          THE COURT:  It's on the docket, I've read it

11  already.

12          MR. MEYLER:  Thank you, Your Honor.  The thing

13  about it is that when I spoke to Mr. Geltzer I said to Mr.

14  Geltzer, sir, I have never wanted to go this route.  Mr.

15  Tsatis, he's right, was the one who led me down this road.

16          THE COURT:  Right.  But you're here now.

17          MR. MEYLER:  And -- yes.  And what is in it for

18  you to keep -- I understand he's administering the law.  But

19  you're owning both my cases and you're telling me as a citizen

20  of the United States who served in the military that you can

21  own these two cases and do as you please and hire whatever

22  attorney, and this is his intention to do whatever he wants to

23  do, which makes me feel very uneasy while I am a disabled

24  person.  And I am truly disabled.  My doctors have documented,

25  I have done MRIs.  And each time that I speak with them they

1    were not nice to me, they'll don't explain, they said we don't

2    owe you anything.  I have them on tape which they have

3    downstairs which shows their demeanor towards me.  And I said

4    to them if you take something from someone, and I said I might

5    not have all the knowledge as a lawyer but here's something

6    very simple, I was duped by my attorney.  I understand that you

7    have the right to protect the creditors, as Mr. Geltzer --

8                    THE COURT:  Right.

9                    MR. MEYLER:  -- made it aware to me.

10                   THE COURT:  Right.

11                   MR. MEYLER:  But you don't have a right to own my

12   two cases when I did not give up my right.  And I would --

13                   THE COURT:  But by filing for bankruptcy you did.

14                   MR. MEYLER:  But I was ill-advised.

15                   THE COURT:  Well, but that may be --

16                   MR. MEYLER:  And --

17                   THE COURT:  -- that may be -- that may give you a

18   claim against your lawyer.

19                   MR. MEYLER:  Yes.

20                   THE COURT:  Number one, I'm not sure that I agree,

21   I believe that.  Again I would have to hear from Mr. Tsatis.

22   Maybe he advised you accurately and you didn't understand it.

23   So that -- but even if he advised you wrongly, I am not sure

24   that that is a basis for me to allow you to dismiss your case

25   in the circumstance where you have assets that would be

1  sufficient to pay your creditors and there is no way after the

2  case is dismissed for us to be -- have any assurance that those

3  creditors would be paid.

4          MR. MEYLER:  Mr. Broude has also said that I may

5  have committed perjury.  First of all, I let the Court also --

6          THE COURT:  Okay.  Well, Mister -- you know,

7  there's been a lot of inflammatory language here which is

8  probably not helpful, probably has not been helpful to the

9  resolution of this case.  But let's try to move beyond that,

10  all right, and think about what would be in your best interest.

11  That's what you need to think about.  And --

12          MR. MEYLER:  Yeah, the best interest I'm suffering

13  financially and yet still I don't want somebody to make it seem

14  as if I'm some irresponsible person who goes about trying to

15  get money.  I've never been a freeloader.  Never will, never

16  will be.  I've always worked hard, I've paid my student loans

17  when I could have, when I was able.  Due to my disability I've

18  encountered a lot that I never asked for.  When the first case,

19  when the first incident happened I reported, I had a lawyer on

20  the case.  The second one I went back to Mr. Tsatis.  I've been

21  truthful, I've been true for every move that I've done.

22          THE COURT:  And I don't think that Mr. Geltzer or

23  Mr. Broude is accusing of untruthfulness.  Although and perjury

24  was probably a poor -- it was probably a bad decision to write

25  that in a pleading or a letter to the debtor under the

1   circumstances.  But I think we heard Mr. Geltzer here today say

2   that he's not saying that you've done anything wrong.  Nobody's

3   saying you've done anything wrong here today.  I'm not saying

4   it.

5           MR. MEYLER:  And I do understand, Your Honor, he

6   doesn't have to work on my behalf, but me as a person who's

7   humble and explain and saying Mr. Geltzer, I have encountered

8   these hardships, is there anything.  He says I'm not entitled

9   to tell you anything or work in your favor, so he has always

10  put up opposition.  Where I've also made you aware of that Ms.

11  Elisofon filed the first case incorrectly and so she's

12  overwhelmed.  She passed my first case to a second attorney.

13  That's why I've always said everything has to be proven by

14  fact, right?  But it seems to me like there's some collusion

15  going on.  All of them is corresponding with each other.  I've

16  never been cc'd by even my attorney.  When I had to call my

17  attorney and said to her, listen, why you cc'ing Mr. Geltzer

18  and Mr. Tsatis on everything but you don't make me aware of

19  anything.  And it's she that I had asked for the loan.  And

20  this is my second time asking for a loan.  I wouldn't ask for a

21  loan if I wasn't in dire need.

22          THE COURT:  Right.  Well, okay.  The only way --

23  you cannot get a loan, while this bankruptcy case is pending

24  you cannot get a loan for your personal use using your personal

25  injury action as collateral.  You cannot do it.

1          MR. MEYLER:  Okay.  And --

2          THE COURT:  Because those assets are in trust for

3     your creditors.

4          MR. MEYLER:  Okay.  And Mr. Geltzer is saying to

5     me he can hire another attorney and all those things, he has a

6     right to do that after Ms. Spence has had these cases and knows

7     the beginning to the end.  And that doesn't --

8          THE COURT:  Okay.

9          MR. MEYLER:  -- sit well with me.

10         THE COURT:  I think I'm understanding what you're

11    saying, that you want -- that you feel like you want to be in

12    control of these actions.

13         MR. MEYLER:  Yes, Your Honor.

14         THE COURT:  And so what I would say is that if you

15    want to -- if that's what you want to do, that you're going to

16    have to see whether you can borrow enough money on those

17    actions to pay off your creditors.

18         MR. MEYLER:  Yes, Your Honor.

19         THE COURT:  If you can't do that, then I don't see

20    any way that this is going to -- and that may -- as much as you

21    may wish to be free of Mr. Geltzer's control of this case, that

22    still may not be in your long-term financial best interest, for

23    you to borrow that money.

24         MR. MEYLER:  But at least that gives me back some

25    control.

1          THE COURT:  Well, it gives you -- yes and no.  It

2     means that you -- that Mr. Geltzer is no longer involved but it

3     does mean also that have to pay a lot of interest to this

4     lender.  And you're going to -- and that could eat up the

5     entire amount of your settlement.  So you may have to pay more

6     than -- you're going to have to pay a lot more -- you're going

7     to get a lot less out of the settlement than you ultimately

8     would if you didn't borrow the money.

9          MR. MEYLER:  Yes.  And what --

10         THE COURT:  Okay.  On the other hand, in addition,

11    as I think you heard Mr. Broude saying before, when the

12    defendants or if the defendants in your personal injury action

13    become aware that you have borrowed money on these actions,

14    it's going to be a lot harder for you to get a good settlement

15    from them.  Because they're going to know that you're going to

16    be desperate to pay them back.

17         MR. MEYLER:  And what's stopping Mr. Geltzer from

18    settling the cases for little or nothing?

19         THE COURT:  Well, that's a reasonable question,

20    Mr. Meyler.

21         MR. MEYLER:  Thank you, Your Honor.

22         THE COURT:  That's a very reasonable question.

23         MR. MEYLER:  Because that's what I'm afraid of.

24         THE COURT:  And I think the answer is that in

25    order for him to settle the case he has to bring on a motion to

1  this Court for approval of the settlement when you would have a

2  right to be heard.  And if you think that they're not being

3  settled for enough, then you would have the right to object to

4  that.  And then I would have to make a determination about

5  whether this is reasonable.

6            MR. MEYLER:  Okay.  Since you --

7            THE COURT:  But I do understand where you're

8  coming from here.

9            MR. MEYLER:  Uh-huh.  Because my -- and I told you

10  the truth, Your Honor, I'm afraid of collusion might be taking

11  place.

12            THE COURT:  Well, it is true I think that Mr.

13  Geltzer in deciding whether to settle these actions is going to

14  have to take into consideration mostly the interest of

15  creditors.

16            MR. MEYLER:  Yes.

17            THE COURT:  And not your interest necessarily.

18            MR. MEYLER:  Yeah.  And then again I have

19  suffered, I went through two accidents that have left me like

20  this, and again it's only to his interest to the creditors,

21  which I understand what you're saying but again all of them has

22  never been from the day when I told my first lawyer and the way

23  in which she dismissed the first case and then I suffered a

24  second accident.  Then if you look on the papers only one

25  accident was listed, but I made aware of everything.  And

1    that's why I'm saying when words like perjury is being used and

2    different things, different tactics against me, it's not been

3    nice and it's not -- doesn't make sense to me.  That's why I

4    say I'm overwhelmed.  And even I speak with them and they go

5    through, they say one thing verbally and then I tell them put

6    it in writing now.  There's violations.  There has been

7    violations.  And yes, they have a right to work for the

8    creditors only.  But if any person's child went through these

9    two accidents like this, I hope nobody's child goes through

10   this.  I'm only 42 years old, I have my whole life ahead of me.

11   But I need money to survive and live.  I used to be the

12   breadwinner.  I have family in Jamaica that I used to take care

13   of.  They also needed me, and I can't do -- and I know I have

14   -- I come first now.  And this is who I am as a man.  And

15   that's it, Your Honor.  I don't know what else to do except say

16   I strongly wanted this vacated and for Ms. Spence to go and

17   depose and do what she needed to do, and I would back the

18   creditors.

19              THE COURT:  Well, how am I going to be sure of

20   that?

21              MR. MEYLER:  Your Honor, as I said, I only have my

22   word to give you.

23              THE COURT:  Yeah, I --

24              MR. MEYLER:  And --

25              THE COURT:  -- I don't think that's --

1          MR. MEYLER:  And --

2          THE COURT:  -- going to be enough.

3          MR. MEYLER:  -- you don't know me, I don't know

4    you, but as all the years, if anyone was to look up my record,

5    when I borrowed any student loan I paid back Stafford, I paid

6    back the bank, I paid back everyone.  I worked within my means

7    of doing things.  I bought my mother a house when she was sick

8    in Jamaica.  And this is personal, but the thing about it was

9    she took ill, she died in 1/3 of '07, and I took losses.  And

10   that's my personal matter.  I walked away from things that I

11   couldn't -- that were out of my control.  But when it comes to

12   responsibility I've never shirked my responsibility.

13         THE COURT:  Well, let's do this.  Why don't we

14   wait -- I think there are two things I think should happen

15   here.  First, I think we should wait and see, we should adjourn

16   this and see where the claims come in, see what level of claims

17   are filed on the bar date, which is January 18th.  I also think

18   that we should try to get you a lawyer who can advise you about

19   -- who can help you to figure out what would be in your best

20   interest here.  And you can go down to Mary Fox in the Pro Se

21   Office, and she will have a list.  And if that doesn't work

22   out, we'll try to get you somebody through the City Bar Justice

23   Project who can help you out.  Because I think you need a

24   lawyer, and a lawyer may be able to look at your whole

25   situation and give you some advice that would help you out

1    here.

2              MR. MEYLER:  Yes, Your Honor.  Okay.

3              MR. GELTZER:  Judge, can I just clarify a few

4    things?  Just as an incidental, we never accused him of

5    committing perjury.

6              THE COURT:  Well, I saw it in the --

7              MR. GELTZER:  It said if the --

8              THE COURT:  I saw it in the papers.

9              MR. GELTZER:  -- schedules aren't true.  It said

10   in the letter if the schedules aren't true, that would be

11   perjury.  We never --

12             THE COURT:  Yeah, well, that --

13             MR. GELTZER:  -- accuse -- okay.

14             THE COURT:  Why are you bandying about words like

15   perjury?  That doesn't -- that's not helpful.

16             MR. GELTZER:  Okay.  Now --

17             THE COURT:  It's not a helpful approach.

18             MR. GELTZER:  In addition, the next point I'd like

19   to make is after we went through this several times with Mr.

20   Meyler, at one point we did tell him we're not in a position to

21   give him legal advice.

22             THE COURT:  Right.

23             MR. GELTZER:  Because that's what it was coming

24   to.  So we made that clear.  What Mr. Meyler also has to

25   understand, when the Court used the phrase hardship discharge

1  he needs to understand that the student loans, one of the rare

2  times a student loan can be, is chargeable is if there's

3  hardship with -- and it's only with respect to the student

4  loans.  And to do that he would have to bring separate

5  lawsuits.

6                THE COURT:  Right.

7                MR. GELTZER:  He needs to understand that.

8                THE COURT:  And they still would be entitled to

9  participate --

10                MR. GELTZER:  To be paid.

11                THE COURT:  -- in a distribution from the personal

12  injury action.

13                MR. GELTZER:  Right.  Now, I've been trying to

14  retain Ms. Spence, the pre-petition personal injury counsel.

15                THE COURT:  Right.

16                MR. GELTZER:  I wrote to her on October 14th, I

17  sent her a sample retention affidavit.

18                THE COURT:  Right.

19                MR. GELTZER:  I wrote to her again today because

20  she hasn't returned it.  She did respond to some letters but

21  she hasn't returned that affidavit yet.  I explained to Mr.

22  Meyler at the 341 meeting that they'll have to call -- that yes

23  I own the cause of action as the trustee, that I would retain -

24  - I would contact Ms. Spence and find out if the causes of

25  action had value for the estate and, if so, I would decide

1  whether to hire her or someone else and he would be -- and this

2  is almost verbatim -- he would be required to cooperate with

3  whomever I hire pursuant to a court order.  So I'm trying.  I

4  have every intention of retaining her if she'll just get that

5  back to me.  And I explained to him that the case could not be

6  settled without my permission and bankruptcy court approval.

7          I am curious about two things that were raised

8  here, and the only reason I'm raising them here is because I'd

9  like to inquire about them at some point.  With respect to Mr.

10  Meyler's income and expenses, he spent some money on the car he

11  owns.  But, Mr. Meyler, I just wonder if he's able to drive

12  that car because of his vision problem as a result of the

13  accident.  I know if he drives the car, if he doesn't drive the

14  car, I wonder why he owns the car --

15          THE COURT:  You're saying he could give it up and

16  then --

17          MR. GELTZER:  That's a possibility.

18          THE COURT:  -- and avoid an expense.

19          MR. GELTZER:  Is he able to drive is the question.

20  Does he drive the car?

21          THE COURT:  Do you need to keep your car?

22          MR. MEYLER:  Yes, Your Honor.

23          THE COURT:  Do you drive or --

24          MR. MEYLER:  I don't drive the car, Your Honor.

25          THE COURT:  Does somebody else --

1        MR. MEYLER:  The car is parked in my  aunt's

2   driveway for --

3        THE COURT:  Sorry?

4        MR. MEYLER:  For over a year and a half now it's

5   parked in my aunt's driveway.

6        THE COURT:  Okay, but is somebody else driving the

7   car?

8        MR. MEYLER:  My cousin used to drive the car, Your

9   Honor.  And I don't allow him to drive it anymore because he's

10  young.

11       THE COURT:  So that might be an expense for you to

12  give up is what Mr. Geltzer is suggesting.

13       MR. MEYLER:  Your Honor, again Mr. Tsatis told me

14  that I would never lose my land, my car or my cases.  Now, why

15  is Mr. Geltzer bringing up my car now?

16       THE COURT:  Well, the point we're making was that

17  you have to borrow money because your income is not sufficient

18  to meet your expenses.  And he's not saying you have to give up

19  your car.

20       MR. MEYLER:  And I explained -- okay.

21       THE COURT:  He's saying would you -- it might be

22  helpful for you.

23       MR. MEYLER:  I'm blind in one eye, Your Honor, due

24  to the accident.

25       THE COURT:  Right.

1            MR. MEYLER:  But because I suffer seizures the

2     doctors have me on medication and they keep saying to me

3     there's hope.  Stem cells also might help me in the future if I

4     get enough money where I can go to New York Eye and Ear and do

5     the stem cell, and therefore I'd be better.  I've improved.

6     I'm not 100% better.  So therefore I'm looking ahead in the

7     future where -- this car was like a baby to me.  It only has

8     50,000 miles on it.

9            THE COURT:  Okay.  Understood.  I get your point,

10    okay.

11           MR. MEYLER:  Thank you.

12           MR. GELTZER:  I was also wondering when he bought

13    this house in Jamaica for his mother, when that was and with

14    what funds.

15           MR. MEYLER:  That was in 2005 or 2006, Your Honor,

16    when I bought the home in Montego Bay for my mom.

17           MR. GELTZER:  I would have other questions to ask

18    as Your Honor would surmise.

19           THE COURT:  Well, I don't, yeah, I don't think

20    we're going to go into a 2004 examination on the record here.

21           MR. GELTZER:  No, I --

22           THE COURT:  And particularly if the personal

23    injury action is going to be sufficient to pay off the

24    creditors.  If the PI action proceeds are sufficient to pay off

25    the creditors, then the rest of those questions become

1    irrelevant.

2              MR. GELTZER:  That's true.  But that may be

3    several years from now, and I don't have several years to wait

4    if I want to pursue that line of inquiry with respect to the

5    purchase of a house in 2006.  Where'd the money come from,

6    Judge?  I don't know.

7              THE COURT:  Okay.  I think Mr. Meyler needs a

8    lawyer.

9              MR. GELTZER:  I agree.

10             THE COURT:  All right.  So I'm going to adjourn

11   this, and I'm going to see if we can get an attorney for you.

12             MR. MEYLER:  Thank you, Your Honor.

13             THE COURT:  What I'd like you to do is stop by

14   Mary Fox's office.  She's the person -- I know you've seen her

15   before.

16             MR. MEYLER:  Uh-huh.

17             THE COURT:  I believe you've seen her before; is

18   that right?

19             MR. MEYLER:  Yes, Your Honor.

20             THE COURT:  Okay.  Why don't you stop by her

21   office, tell her I told you to do that, and see if she can

22   recommend a lawyer, recommend a place for you to go to get a

23   low-cost or no-cost attorney to advise you about how you can

24   best protect your interests in this case.

25             MR. MEYLER:  Okay.

58

1           THE COURT:  So let's pick another date for this.

2           THE CLERK:  Mary's at lunch right now.

3           THE COURT:  Yes, she may not be back from her

4    lunch break until after 1:00.  But you can call her office

5    also.

6           MR. MEYLER:  Okay.  I get the number down there?

7           THE COURT:  He wants to know what the phone number

8    is.

9           THE CLERK:  347-394-1738.

10          THE COURT:  347-394-1738.

11          THE CLERK:  But if he can wait until --

12          MR. MEYLER:  Thank you, Your Honor.

13          THE COURT:  What time does she get back?

14          THE CLERK:  She'd probably be back at 1:00.

15          THE COURT:  Okay.  If you can wait until 1:00 and

16   speak to her, that would be better.

17          MR. MEYLER:  Thank you.

18          THE COURT:  All right.  So let's pick another date

19   for this in early February.

20          THE CLERK:  February 3rd.

21          THE COURT:  February 3rd.

22          THE CLERK:  At 11:30.

23                 [Court and Clerk confer.]

24          THE COURT:  Okay, 11:30.

25          MR. MEYLER:  Thank you, Your Honor.

1          MR. GELTZER:  Your Honor, I'm not going to be able

2     to be here on February 3rd.  I have to be in Southern District.

3     Mark could be here February 3rd.

4          THE COURT:  All right.  That's probably fine.  But

5     it's just going to be on the regular calendar.

6          MR. GREW:  Okay.

7          THE COURT:  It's not going to be a trial.

8          MR. GELTZER:  You seem relieved, Judge.

9          THE COURT:  What's that?

10          MR. GELTZER:  You seem almost relieved.  But

11     that's all right.

12          THE COURT:  All right.  Okay.

13          MR. MEYLER:  Thank you, Your Honor.

14          THE COURT:  All right.

15          MR. MEYLER:  Have a good day.

16          THE CLERK:  All rise.

17     (Proceeding ended at 12:34 p.m.)

18                              * * * * *

19

20

21

22

23

24

25

60

1          I certify that the foregoing is a court transcript from

2     an electronic sound recording of the proceedings in the above-

3     entitled matter.

4

5                              _____

6

7                                   Sally Reidy

8     Dated: December 6, 2010

Order Online at:  www.typewp.com

## $

**$100,000** [2] 9:8 11:18
**$110.50** [1] 33:21
**$1400** [1] 11:2
**$150,000** [1] 7:23 12:6
**$20,000** [3] 7:12 9:8 11:17
**$30,000** [4] 8:3 21:2,3 30:14
**$50,000** [3] 8:7 42:1,3
**$500,000** [2] 15:2 23:22
**$650** [1] 5:8
**$87** [1] 11:3

## 0

**07** [1] 51:9

## 1

**1/3** [1] 51:9
**1:00** [3] 58:4,14,15
**10** [1] 1:9
**100%** [1] 56:6
**100,000** [1] 8:9
**10022** [1] 1:19
**11:21** [1] 2:1
**11:30** [2] 58:22,24
**11218** [1] 1:15
**12:34** [1] 59:17
**120** [1] 11:19
**1200** [2] 33:20,22
**12866** [1] 1:23
**1300** [1] 33:21,22
**1313** [1] 10:21
**14th** [1] 53:16
**15** [1] 9:7
**18th** [2] 8:1 51:17

## 2

**20** [1] 18:15
**2004** [1] 56:20
**2005** [1] 56:15
**2006** [2] 56:15 57:5
**2010** [1] 60:5
**2011** [1] 8:2
**211** [1] 1:22
**25%** [2] 9:7 17:17
**25,000** [1] 18:15

## 3

**30** [2] 8:6 21:4
**30,000** [1] 12:10
**31st** [1] 5:6
**341** [6] 4:3 16:22 17:2 18:14,19 53:22
**347-394-1738** [2] 58:9,10
**3f** [1] 1:14
**3rd** [4] 58:20,21 59:2,3

## 4

**42** [1] 50:10

## 5

**50** [1] 8:10
**50,000** [1] 56:8

## 6

**6** [1] 60:5
**65** [1] 21:4

## 7

**7** [1] 19:6

## 8

**885** [1] 1:18

## 9

**91** [1] 1:14

## A

**a.m** [1] 2:1
**abandon** [1] 15:19
**able** [17] 5:12,17 15:4 19:20 20:12 21:9 23:5 28:7 32:4 33:25 38:12 41:22 45:17 51:24 54:11,19 59:1
**above** [1] 60:2
**absence** [1] 26:6
**absolutely** [3] 19:10 24:15 38:6
**accident** [8] 3:6,7,10,12 49:24,25 54:13 55:24
**accidents** [2] 49:19 50:9
**accomplishes** [1] 32:16
**according** [2] 11:1 24:25
**accordingly** [1] 10:13
**account** [2] 20:21 30:13
**accurate** [2] 11:10 18:10
**accurately** [1] 44:22
**accuse** [1] 52:13
**accused** [1] 52:4
**accusing** [1] 45:23
**action** [28] 15:20 17:20 18:21 23:13,17 26:3,10,15,21 27:3 31:10 34:9 35:12 36:8 38:13 39:7,24 40:17 41:25 42:2,17 46:25 48:12 53:12,23,25 56:23,24
**actions** [15] 9:15 11:6,7,13,23 16:24 22:24 23:12,21 27:8 34:7 47:12,17 48:13 49:13
**actually** [1] 34:8
**add** [1] 14:14
**added** [1] 9:12
**addition** [3] 22:11 48:10 52:18
**additionally** [2] 9:19 11:5
**address** [2] 10:18 12:4
**adjourn** [1] 19:25 51:15 57:10
**adjournments** [3] 5:7,7,8
**administer** [2] 15:18 39:8
**administered** [5] 26:10 35:9,10,11 38:25
**administering** [2] 28:25 43:18
**administrated** [1] 36:17
**administration** [2] 21:20,23
**administrative** [2] 15:8,10
**advance** [12] 3:17 6:16 7:1 8:18,25 9:8,13 11:14 15:3 25:16,19 28:3
**adverse** [1] 23:16
**advice** [3] 3:18 51:25 52:21
**advise** [2] 51:18 57:23

**advised** [3] 3:15 44:22,23
**affidavit** [5] 9:25 10:4,14 53:17,21
**affidavits** [1] 10:10
**affirmation** [1] 43:1
**afraid** [3] 40:7 48:23 49:10
**agendas** [1] 6:1
**ago** [2] 4:23 22:7
**agree** [3] 14:2 44:20 57:9
**agreement** [1] 5:9
**ahead** [4] 5:3 31:9 50:10 56:6
**aide** [1] 33:23
**aleman** [2] 3:15,18
**allegation** [1] 18:3
**allow** [8] 27:6,6,8,10 37:25 39:7 44:24 55:9
**allowed** [1] 26:13
**almost** [3] 6:9 54:2 59:10
**already** [2] 18:19 43:6,11
**although** [3] 14:18 23:15 45:23
**amount** [12] 1:2,1 14:12 26:21 34:3 39:15,18 40:16 41:12,23 42:14 48:5
**amounts** [4] 19:20 25:9,10 32:11
**another** [5] 13:17 34:13 47:5 58:1,18
**answer** [4] 4:3 28:17 48:24
**anybody** [1] 24:21
**anytime** [1] 31:25
**apologize** [2] 4:21 24:12
**apologizing** [1] 4:25
**apparently** [1] 24:16
**appearances** [2] 1:12 2:3
**approach** [1] 52:17
**appropriate** [1] 7:14
**approval** [2] 49:1 54:6
**approved** [1] 13:18
**approximately** [1] 8:7
**apt** [1] 1:14
**area** [1] 29:8
**areas** [1] 28:12
**aren't** [3] 21:13 52:9,10
**assess** [2] 30:3 33:14
**asset** [2] 25:21 26:10
**assets** [4] 26:9 28:25 44:25 47:2
**assume** [1] 16:12
**assuming** [3] 18:9,11 38:1
**assurance** [5] 24:20 30:15,17 32:15 45:2
**assure** [1] 20:14
**assured** [1] 3:25
**attach** [1] 13:9
**attempted** [1] 41:14
**attended** [1] 17:1
**attorney** [22] 3:6 5:19 6:6 16:20,23 17:1,9 18:3,24 19:9 25:17 28:1 40:19,19 43:22 44:6 46:12,16,17 47:5 57:11,23
**attorneys** [4] 4:13,15 15:14,20
**audio** [1] 24:8
**aunt's** [2] 55:1,5
**authorized** [1] 13:16
**available** [1] 15:2

**avenue** [1] 1:18
**avoid** [1] 54:18
**aware** [5] 44:9 46:10,18 48:13 49:25
**away** [3] 38:20,22 51:10

## B

**baby** [1] 56:7
**back** [28] 4:15 5:3,8,20 6:13 8:17 9:10 11:5 16:6 25:5,11 27:1 36:3 37:9,22 38:2 42:24 45:20 47:24 48:16 50:17 51:5,6,6 54:5 58:3,13,14
**bad** [1] 45:24
**badly** [1] 16:16
**balance** [1] 31:20
**bandying** [1] 52:14
**bank** [1] 51:6
**bankruptcy** [70] 1:11 2:22 3:3,15 5:15,16 6:1,21 7:16 9:5,5,11,20,21,22 10:12,15,20 12:13 13:17 14:20 17:6,8,15,20,22 18:5,19 20:2,11 21:12 22:12,22,24 23:14 24:20 25:22 26:14,19 27:1,21 28:4,18,23 30:23 31:1,22 32:16 33:1,4,4 34:16,20 35:1,3,7 36:12 37:18 38:8,24 39:6,22,25 40:11 41:22 42:22 44:13 46:23 54:6
**bar** [9] 7:24 14:9 19:25 20:24 21:3 26:17 41:10 51:17,22
**based** [2] 13:15 30:8
**basis** [1] 44:24
**basketball** [1] 3:14
**bay** [2] 22:16 56:16
**become** [2] 48:13 56:25
**becomes** [1] 28:24
**beg** [2] 2:25 20:19
**began** [1] 2:1
**begin** [2] 9:10,16
**beginning** [2] 33:8 47:7
**begun** [1] 11:6
**behalf** [1] 46:6
**believe** [11] 11:3,23 12:12 18:11 29:9,9,25 30:5 33:12 44:21 57:17
**believed** [1] 29:10
**believes** [1] 9:21
**belongs** [1] 15:20
**benefit** [5] 22:2,5 26:11 28:25 42:15
**best** [12] 13:20,21 23:6 26:15,24 28:3 31:15 34:10 45:10,12 47:22 51:19 57:24
**better** [12] 17:25,25 18:1 20:9 26:18,18 34:2 36:24 42:21 56:5,6 58:16
**between** [1] 19:16
**beyond** [1] 45:9
**bigger** [1] 17:5
**bills** [2] 6:10 28:8
**blind** [1] 55:23
**blood** [1] 4:9
**borrow** [17] 15:3,4 21:16,18 23:22 39:24 40:3 41:12,21,23 42:1,1,19 47:16,23 48:8 55:17

---

TypeWrite Word Processing Service
(518) 581-8973  Fax (518) 207-1901
Order Online at:  www.typewp.com

Order Online at:  www.typewp.com

**borrowed** [3] 28:5 48:13 51:5
**borrowing** [1] 17:16
**both** [3] 37:23 40:21 43:19
**bought** [3] 51:7 56:12,16
**breadwinner** [1] 50:12
**break** [1] 58:4
**briefing** [1] 4:3
**bring** [2] 48:25 53:4
**bringing** [1] 55:15
**brooklyn** [2] 1:15 3:14
**broude** [42] 1:16 2:6,6 7:22 8:1,4,9,
13,17,20,22 9:1,4 10:2,5,9,11,20
12:6,9,11,16,19 14:22 17:5,8 20:
23 21:2,7,10,21,23,25 22:2 24:4,6,
17,23 31:6 45:4,23 48:11
**brought** [1] 6:3
**burden** [1] 28:10
**business** [4] 23:15,16 27:16 32:10

**C**

**calendar** [1] 59:5
**call** [8] 4:16 10:6,8 20:1 37:10 46:
16 53:22 58:4
**called** [2] 4:15 19:23
**calling** [2] 2:2 3:9
**calls** [1] 28:19
**came** [4] 4:22,23 5:4 10:1
**cannot** [7] 33:3,5 39:23,24 46:23,
24,25
**car** [15] 54:10,12,13,14,14,20,21,24
55:1,7,8,14,15,19 56:7
**card** [1] 28:4
**care** [4] 3:24 22:13 32:14 50:12
**carla** [1] 1:10
**case** [67] 1:9 2:2,22 3:3,10,23 5:15,
16 6:24 7:16 9:13,17 10:12 13:15,
16 15:18 20:13 21:11,20 22:22 24:
20 25:4,14,22 26:9,14,20 28:2,13
30:11,23 31:1,8,13,14,15,22 33:5
34:16,20,22 35:3,7,9,14 36:17,19
37:19 38:24 39:2,25 41:1 42:22
43:2 44:24 45:2,9,18,20 46:11,12,
23 47:21 48:25 49:23 54:5 57:24
**cases** [25] 4:11,12,13,16 5:19,19,
22 9:9 11:9,11,14,16 12:23,24 13:
5,21,24 17:23 28:22 43:19,21 44:
12 47:6 48:18 55:14
**cash** [2] 3:17 28:3
**cause** [2] 33:11 53:23
**causes** [1] 53:24
**cc'd** [1] 46:16
**cc'ing** [1] 46:17
**cell** [1] 56:5
**cells** [1] 56:3
**certain** [4] 7:11 10:6 19:6 28:11
**certainly** [3] 16:10 17:24 19:16
**certainty** [1] 23:13
**certified** [1] 31:3
**certify** [1] 60:1
**change** [3] 13:25,25 31:24
**changed** [1] 41:6
**changes** [1] 33:16
**changing** [1] 4:25

**chapter** [1] 19:6
**charge** [4] 28:24 34:5,6 42:8
**chargeable** [1] 53:2
**checks** [1] 32:10
**child** [2] 50:8,9
**circumstance** [1] 44:25
**circumstances** [1] 46:1
**citizen** [1] 43:19
**city** [1] 51:22
**civil** [1] 4:16
**claim** [6] 10:5 14:15,16 19:6 33:16
44:18
**claimed** [2] 19:2 33:21
**claims** [20] 5:3,4 8:5,11,15,15 10:6
12:1,2,7 14:11,12,15 17:9 18:18,
19 20:25 23:20 51:16,16
**clarify** [1] 52:3
**clause** [1] 4:20
**clear** [2] 16:23 52:24
**clearer** [1] 16:24
**clerk** [14] 2:2,8,11,13 38:20 41:4
58:2,9,11,14,20,22,23 59:16
**closer** [1] 13:2
**cognizant** [1] 8:14
**collateral** [1] 46:25
**collect** [1] 9:19
**college** [1] 3:14
**collusion** [2] 46:14 49:10
**come** [8] 8:12 9:10 10:1,3 11:16
12:8 15:1 19:18 28:15 31:19 36:
22 50:14 51:16 57:5
**comes** [4] 13:1,6 26:17 51:11
**coming** [2] 49:8 52:23
**comment** [1] 20:24
**committed** [1] 45:5
**committing** [1] 52:5
**complete** [1] 18:16
**con** [1] 32:6
**concern** [2] 12:4 16:5
**concerned** [2] 12:22 35:15
**conclusion** [1] 27:9
**confer** [1] 58:23
**confidence** [1] 9:23
**conflict** [2] 32:19,20
**confused** [2] 4:12 10:22
**connection** [3] 6:5 9:14,14
**consent** [5] 12:14,18 19:24 25:13
40:3
**consents** [1] 39:22
**consequences** [1] 17:20
**consider** [2] 16:8 23:9
**consideration** [3] 20:11 33:17 49:
14
**consult** [1] 4:13
**consulted** [3] 3:20 4:15 28:10
**contact** [2] 39:18 53:24
**contacted** [2] 31:17 40:18
**context** [5] 14:19 15:17 30:22,23
31:13
**continue** [1] 32:7
**contradicting** [1] 22:7
**contrary** [1] 13:18

**control** [7] 7:18 18:21 27:14 47:12,
21,25 51:11
**conversation** [3] 18:7,25 19:11
**cooperate** [1] 54:2
**correct** [7] 7:25 8:4 12:9,11 14:20,
22 23:3
**correctly** [3] 16:21 21:18 37:17
**correspond** [1] 6:7
**correspondence** [1] 29:15
**corresponding** [2] 6:7 46:15
**costs** [2] 15:8,12
**couldn't** [4] 3:16 12:17 15:17 51:
11
**counsel** [6] 11:8,10,13,21 17:3 53:
14
**couple** [1] 19:24
**course** [2] 12:25 26:15
**court** [255] 1:20 2:4,14,16,18,21,25
3:2,12 5:4,4,14,21 6:15,18,20,23 7:
1,4,7,14,16,20,24 8:3,5,8,11,16,19,
21,24 9:2,25 10:3,8,10,17 11:8,25
12:7,10,14,17,21,24 13:2,6,7,11,
13 14:4,7,11,14,18,25 15:9,12,15
16:2,4,7,11,13,16 17:1,6,10 18:2,9,
18 19:13,17,22 20:3,10,16,19,22
21:1,6,8,15,22,24 22:1,5,14,17,21
23:1,5,9,18,20 24:1,2,6,11,13,16,
19,24 25:3,8,18 26:4 27:12,17,21,
24 28:5,23 29:5,7,13,17,22,24 30:
10,20,22 31:5,7,21,24 32:2,4,7,23,
25 33:3,10,12,25 34:13,22,25 35:3,
6,23 36:2,5,11,20,23 37:4,11,16,
23 38:6,11,18,23 39:2,5,11,15,21
40:2,7,11,14,24 41:8,18 42:5,7,12,
17,19 43:3,5,8,10,16 44:8,10,13,
15,17,20 45:5,6,22 46:22 47:2,8,
10,14,19 48:1,10,19,22,24 49:1,7,
12,17 50:19,23,25 51:2,13 52:6,8,
12,14,17,22,25 53:6,8,11,15,18 54:
3,6,15,18,21,23,25 55:3,6,11,16,
21,25 56:9,19,22 57:7,10,13,17,20
58:1,3,7,10,13,15,18,21,23,24 59:
4,7,9,12,14 60:1
**courts** [1] 11:12
**cousin** [1] 55:8
**craig** [1] 1:10
**credibility** [1] 30:3
**credible** [1] 33:14
**creditor** [9] 9:20,22 10:2,14
**creditors** [68] 3:9 5:18,20,23 6:13
8:14,20,22 9:5,9,12,16 10:6 12:4
13:20 15:5,7,18,24 18:1 20:12,14
21:7 22:16 24:23 25:1,6,11,22,23
26:7,7,11,21 28:25 30:13,13,14 31:
4,12,15,19 32:9,11,17 33:18 34:14
35:13 36:8 38:3,15 39:8 40:4,21
41:11,24 42:20 44:7 45:1,3 47:3,
17 49:15,20 50:8,18 56:24,25
**curious** [1] 54:7

**D**

**damages** [2] 13:15,22
**date** [11] 7:25 14:9 19:25,25 20:24

21:3 26:17 41:10 51:17 58:1,18
**dated** [1] 60:5
**day** [8] 5:7 6:3 13:6 15:24 27:5 35:
18 49:22 59:15
**days** [1] 19:24
**deal** [1] 23:17
**debt** [5] 7:23 15:25 30:15 38:7 41:
25
**debtor** [28] 1:7,13 7:22 8:13 10:11
11:14 13:10,18,21 15:3 16:20,21
17:12,13,18,18 19:3,12,14,19 20:1
22:3,8,9,11 23:10,15 45:25
**debtor's** [4] 10:16 14:6 23:1 43:1
**debts** [5] 9:19 23:3 25:24 26:7 27:
24
**december** [1] 60:5
**decide** [2] 17:14 53:25
**deciding** [1] 49:13
**decision** [3] 16:10 34:11 45:24
**decisions** [2] 5:12 29:6
**declaration** [1] 26:4
**defendants** [4] 11:15,20 48:12,12
**definitely** [1] 35:20
**degree** [2] 13:9 19:9
**delay** [3] 11:20,21,21
**demeanor** [1] 44:3
**demetrios** [1] 3:19
**demonstrated** [1] 17:13
**depending** [2] 12:1 14:8
**depose** [1] 50:17
**deposed** [1] 11:6
**depositions** [1] 13:23
**derrick** [4] 1:5,13 2:2,10
**description** [1] 43:2
**desperate** [1] 48:16
**destiny** [2] 7:18 22:13
**determination** [1] 49:4
**died** [1] 51:9
**different** [4] 25:25 32:11 50:2,2
**digits** [1] 42:9
**dire** [1] 46:21
**directed** [1] 31:5
**directing** [1] 31:3
**disa** [1] 10:25
**disability** [11] 4:8,20,20 6:4 10:21,
22 29:16,18,21 33:23 45:17
**disabled** [8] 3:21,21,22 4:2 30:1
34:17 43:23,24
**discharge** [38] 5:22 8:15 15:6 21:
9,9,10 22:17 23:2 25:23 26:1,5,19
29:1,20 32:18 34:16,18,23,24 35:1,
4,8,8,9,14,16,21,22 36:18 38:2,5,9,
12,24 39:3 40:12,15 52:25
**dischargeable** [4] 14:17 23:2 25:
24,25
**discharged** [7] 21:14 26:8 30:8
37:7,8 38:8 40:9
**disclosure** [5] 5:10,11,17 29:3 33:
9
**discover** [1] 28:4
**discrepancy** [1] 11:4
**discuss** [2] 19:1 29:19

**discussed** [1] 29:7
**dismiss** [22] 1:9 2:22 3:3 5:14,16 6:23 10:12 15:17 20:13 24:20 25: 4 31:8 34:22 35:7,14 37:18,20,24 39:2 41:1 43:2 44:24
**dismissal** [4] 21:4,19 25:14 33:11
**dismissed** [10] 21:5 27:14 30:11 31:16 35:4 37:24,25 38:1 45:2 49: 23
**dismisses** [1] 37:24
**dismissing** [1] 21:11
**disposable** [1] 11:2
**dispositive** [1] 18:14
**distribute** [1] 34:15
**distribution** [2] 14:21 53:11
**distributions** [1] 30:25
**district** [1] 59:2
**docket** [1] 43:10
**doctors** [2] 43:24 56:2
**documented** [1] 43:24
**doing** [2] 33:2 51:7
**dollars** [1] 13:23
**done** [7] 20:7 30:22 32:15 43:25 45:21 46:2,3
**double** [1] 42:8
**down** [6] 16:19 28:9 36:3 43:15 51: 20 58:6
**downstairs** [1] 44:3
**drive** [8] 54:11,13,19,20,23,24 55:8, 9
**drives** [1] 54:13
**driveway** [2] 55:2,5
**driving** [1] 55:6
**due** [2] 45:17 55:23
**duped** [2] 27:23 44:6
**during** [2] 3:8 26:14

### E

**each** [2] 43:25 46:15
**ear** [1] 56:4
**early** [3] 14:1 23:17 58:19
**easily** [1] 6:13
**eat** [1] 48:4
**educated** [1] 5:11
**effect** [1] 11:22
**effectual** [1] 17:17
**either** [10] 5:20,20 16:20 23:24 26: 20 30:22 35:13 38:18 39:5,6
**electronic** [1] 1:24 60:2
**elisofon** [5] 3:6 6:6 28:2,12 46:11
**email** [2] 29:12,14
**emails** [1] 4:19
**encountered** [4] 3:5,7 45:18 46:7
**encountering** [1] 3:8
**encumbered** [2] 41:24,25
**encumbering** [1] 14:2
**end** [10] 9:17 15:24 21:11 27:2,5 33:24 35:18 42:12,14 47:7
**ended** [1] 59:17
**enough** [6] 15:4 23:22 26:21 40:3 47:16 49:3 51:2 56:4
**ensuring** [1] 30:20
**entire** [3] 4:7 27:14 48:5

**entitled** [17] 14:20 26:1,2,5 34:18 35:19 36:5,6,7 38:7,14 40:12,14, 15 46:8 53:8 60:3
**envelopes** [1] 4:11
**escalating** [1] 11:19
**especially** [1] 23:13
**esq** [1] 1:16
**estate** [1] 53:25
**estimation** [1] 13:22
**even** [18] 10:16 11:6 12:23 13:10, 18,23 14:15,15 16:24 28:14 33:15 35:23 38:11,11 40:14 44:23 46:16 50:4
**everybody** [1] 22:25
**everyone** [1] 51:6
**everything** [9] 3:21 18:17,17 28:9, 20 43:4 46:13,18 49:25
**exactly** [2] 6:25 25:5
**examination** [1] 56:20
**except** [4] 4:8 27:3 40:11 50:15
**exchange** [1] 29:1
**exempt** [7] 3:23 10:23,25 11:1 16: 6,8 30:1
**exemption** [1] 19:2
**exercise** [1] 23:9
**exist** [1] 4:21
**expense** [2] 54:18 55:11
**expenses** [3] 11:2 54:10 55:18
**experience** [1] 9:9
**expertise** [1] 28:11
**explain** [6] 16:21 19:9 39:23 41:3 44:1 46:7
**explained** [8] 19:9 20:5,8 28:6,24 53:21 54:5 55:20
**eye** [4] 4:9 55:23 56:4

### F

**face** [1] 3:13
**fact** [8] 8:14 15:2 19:21 26:16 30:1 33:17 34:17 46:14
**facts** [1] 31:14
**failure** [1] 25:13
**family** [1] 50:12
**far** [6] 8:3 12:25 13:4,9 30:4 35:15
**favor** [1] 46:9
**february** [4] 58:19,20,21 59:2,3
**feel** [3] 7:1 43:23 47:11
**few** [2] 22:7 52:3
**figure** [2] 34:1 51:19
**file** [8] 3:22 5:3 8:14 9:10 27:21 28: 4
**filed** [5] 3:10 10:5,6 12:1 14:12,16 18:19,22 19:19 20:11 28:12,18 29: 16 46:11 51:17
**filing** [2] 18:4 44:13
**finally** [2] 5:5,8
**financial** [2] 3:8 28:10 47:22
**financially** [2] 28:20 45:13
**find** [2] 27:1,5 30:5 53:24
**fine** [4] 15:8 19:21 30:11 59:4
**first** [14] 2:23 28:1 29:8 31:4 41:9 45:5,18,19 46:11,12 49:22,23 50: 14 51:15

**following** [1] 36:20
**foregoing** [1] 60:1
**foresee** [1] 17:11
**forget** [1] 7:11
**form** [2] 30:23 38:17
**fox** [1] 51:20
**fox's** [1] 57:14
**free** [1] 47:21
**freeloader** [1] 45:15
**front** [2] 4:1 36:22
**full** [3] 15:8,24 17:23
**fully** [3] 2:24 3:1 15:17
**fund** [1] 30:24
**funds** [2] 39:8 56:14
**futility** [1] 13:9
**future** [2] 56:3,7

### G

**gallo** [1] 8:6
**gave** [1] 11:17
**geltzer** [101] 1:17 2:3,5,5,6 4:5 6:2 7:12,21 12:20,21,22 13:4,8,12,14 14:5,7,10,13,17,23 15:7,11,13,22 16:3,6,9,12,15,18 17:3,9,11 18:6, 13,18,23 19:15,21,23 20:4,15,17, 20 21:13 22:4,6,15,19,23 23:4,8, 19,24 25:15 26:23 27:10 28:21 31: 6 32:20 34:15 37:2 39:19 42:25 43:13,14 44:7 45:22 46:1,7,17 47: 4 48:2,17 49:13 52:3,7,9,13,16,18, 23 53:7,10,13,16,19 54:17,19 55: 12,15 56:12,17,21 57:2,9 59:1,8, 10
**geltzer's** [1] 47:21
**gets** [3] 15:23 17:24 21:10 22:5,17
**getting** [8] 17:21,21,22 21:8,25 23: 2 26:22 39:20
**give** [15] 5:1,9 22:10 28:16 32:12, 21 33:15 44:12,17 50:22 51:25 52: 21 54:15 55:12,18
**given** [4] 5:11,17 11:14 25:9
**gives** [2] 47:24 48:1
**giving** [2] 33:8 35:25
**goal** [1] 22:18
**good-bye** [1] 30:12
**got** [3] 13:25 1 38:12 41:15
**gotten** [1] 10:15
**gravely** [1] 6:9
**greater** [1] 13:9
**grew** [1] 59:6
**grounds** [1] 29:20
**guess** [2] 20:10 35:17

### H

**half** [2] 13:22 55:4
**hand** [5] 4:6 22:8,9,15 48:10
**handle** [2] 6:12,12 27:15
**happen** [3] 33:1,6 51:14
**happened** [6] 3:10 4:17 14:1 30:8 40:21 45:19
**happening** [2] 6:5 37:1,6
**happens** [4] 10:7 12:16 28:23 32: 1

**hard** [4] 13:3 30:5 31:14 45:16
**harder** [1] 48:14
**hardship** [14] 26:1,5 28:10 34:18 35:16,20,21 38:5,9,12 40:12,15 52: 25 53:3
**hardships** [2] 3:9 46:8
**he'll** [1] 4:18
**headache** [1] 28:19
**hear** [4] 2:23,24 3:1,3 13:3 25:11 29:11 33:13 36:24 37:2 44:21
**heard** [6] 25:5 30:5 46:1 48:11 49: 2
**hearing** [4] 2:22 3:2 4:4 24:8
**help** [7] 17:19,19 33:23 51:19,23, 25 56:3
**helpful** [6] 36:23 45:8,8 52:15,17 55:22
**high** [4] 26:25 34:4,6 42:7
**highly** [1] 12:23
**himself** [5] 15:25 16:8 40:23 41:17, 21
**hire** [4] 43:21 47:5 54:1,3
**hit** [1] 3:13
**home** [2] 3:9 56:16
**honor** [61] 5:13 6:17,25 7:3,10,22 9:24 11:5 12:11,20 13:17 15:22 16:9 20:9,23 24:3 27:19 30:7 33: 20 34:21,24 35:21 36:1,9,10,15,25 37:3 39:13,13,17 40:1,6,11 41:14, 16,18,25 43:7,12 46:5 47:13,18 48: 21 49:10 50:15,21 52:2 54:22,24 55:9,13,23 56:15,18 57:12,19 58: 12,25 59:1,13
**honorable** [1] 1:10
**hope** [3] 35:24 50:9 56:3
**hounding** [1] 9:6
**house** [3] 51:7 56:13 57:5
**however** [6] 6:4 18:7 25:6
**huge** [1] 11:4
**humble** [1] 46:7
**hundred's** [1] 11:18
**hurt** [2] 11:14 17:18
**hurts** [1] 36:4

### I

**idea** [1] 36:2
**ill** [1] 51:9
**ill-advised** [1] 44:14
**impose** [1] 13:19
**improved** [1] 56:5
**incident** [1] 45:19
**incidental** [1] 52:4
**include** [2] 8:6 26:9
**income** [6] 10:21,22,25 11:3 54:10 55:17
**incorrectly** [3] 18:4 28:13 46:11
**indicate** [1] 32:11
**indiscernible** [2] 36:17,19
**inflammatory** [1] 45:7
**information** [4] 10:9 19:4,4 34:5
**informed** [1] 18:4
**injured** [2] 3:14 4:9
**injuries** [1] 6:9

Order Online at: www.typewp.com

**injury** [42] 9:15 11:8,10,13,21,23 **12:**24 13:5,24 15:19 16:23,24 17:1, 23 18:21 22:24 26:10,20 27:3,8,8, 11 **28:**7 31:10 32:8,13 34:7,9 35: 12,18 38:13 39:7,24 40:17 41:24 **42:**2,17 46:25 48:12 53:12,14 56: 23
**inquire** [1] 54:9
**inquiry** [1] 57:4
**instead** [1] 42:13
**institutional** [1] 25:10
**instructed** [2] 16:23 19:9
**instructions** [1] 31:24
**intelligence** [1] 28:11
**intention** [2] 43:22 54:4
**interest** [24] 11:16 13:20,21 14:6 15:25 17:17 20:12 23:2 26:25,25 31:15 34:3,6,10 42:6,7 45:10,12 47:22 48:3 49:14,17,20 51:20
**interests** [4] 20:21 30:13 33:17 57: 24
**interpret** [1] 25:12
**intimated** [1] 22:9
**intrigued** [1] 6:3
**involved** [4] 13:10 31:9 41:15 48:2
**irrelevant** [2] 18:13 57:1
**irresponsible** [1] 45:14
**isn't** [2] 15:9 25:8

### J

**jamaica** [3] 50:12 51:8 56:13
**january** [3] 5:6 8:1 51:17
**job** [2] 28:20 32:10,12
**judge** [16] 1:11 2:3,24 3:5 4:1 5:5 12:22 13:17 22:25 24:10 33:8 37: 20 42:23 52:3 57:6 59:8
**july** [1] 4:7
**justice** [1] 51:22

### K

**keep** [8] 3:17 4:25 11:19 22:15 27: 7 43:18 54:21 56:2
**keeping** [1] 10:15
**kind** [5] 3:12 21:21 22:9 33:15 36: 18
**knowing** [1] 31:12
**knowledge** [1] 44:5
**knowledgeable** [1] 19:12
**knows** [2] 10:23 47:6

### L

**lack** [1] 17:13
**land** [2] 3:23 55:14
**language** [1] 45:7
**last** [3] 5:7 19:24 24:4
**latham** [1] 1:17
**law** [9] 3:22 19:7 20:18,21 29:8,16, 18 30:5 43:18
**lawsuit** [1] 29:25
**lawsuits** [6] 4:10 6:16 19:1 25:20, 21 53:5
**lawyer** [19] 2:18 4:15 17:6,8 30:6 32:8,13 39:19 40:20,23 44:5,18 45:

19 49:22 51:18,24,24 57:8,22
**lead** [1] 33:9
**learning** [1] 5:25
**least** [4] 23:7 30:14 39:22 47:24
**leave** [1] 15:19
**led** [1] 43:15
**left** [2] 6:9 49:19
**legal** [1] 52:21
**lend** [4] 22:11 23:11,12 34:7
**lender** [3] 44:2 46:6 48:4
**lenders** [6] 12:12 23:10,11,16 34:5, 7
**less** [1] 48:7
**letter** [9] 11:22 25:17 28:15,15 31: 2,18 41:15 45:25 52:10
**letters** [1] 53:20
**level** [4] 14:8 19:19 23:21 51:16
**liability** [1] 13:15
**life** [1] 50:10
**line** [1] 57:4
**list** [1] 51:21
**listed** [2] 19:2 49:25
**listen** [1] 46:17
**listened** [1] 24:7
**listing** [1] 24:18
**little** [1] 48:18
**live** [5] 7:2 8:18,25,25 10:19 32:21 33:20 34:1 50:11
**living** [1] 7:18
**livingston** [1] 5:5
**llp** [1] 1:17
**loan** [40] 3:16 9:7 12:2,12 14:3,15 15:19 16:1 19:20 21:22,25 25:16 26:12,18,22,23,24 27:4,7 30:15,24 32:21 33:5 34:14 35:13,15,18 36:6 38:7 39:12 40:6,8,8 46:19,20,21, 23,24 51:5 53:2
**loans** [6] 8:7 9:14 21:13 22:20,21 25:24 26:5,6,19 27:3,6 34:17,23 45:16 53:1,4
**logic** [1] 42:21
**long** [4] 4:22 17:16 33:4 34:2
**long-term** [2] 26:25 47:22
**longer** [1] 48:2
**look** [10] 10:20 14:16 16:19 20:24 27:20 34:19 35:15 49:24 51:4,24
**looking** [3] 13:20 20:6 56:6
**lose** [2] 18:21 55:14
**losing** [1] 3:23
**losses** [1] 51:9
**lost** [2] 28:20,20
**lot** [9] 3:9 9:15 42:3 45:7,18 48:3,6, 7,14
**low** [1] 23:21
**low-cost** [1] 57:23
**lunch** [2] 58:2,4

### M

**macey** [2] 3:15,18
**made** [8] 6:3 7:13 8:17 30:25 44:9 46:10 49:25 52:24
**mail** [2] 10:1 31:3
**man** [1] 50:14

**manageable** [1] 11:3
**manner** [1] 6:12
**many** [3] 4:10 14:11 25:9
**mark** [4] 1:16 2:6 19:23 59:3
**mary** [2] 51:20 57:14
**mary's** [1] 58:2
**matter** [4] 3:16 11:24 51:10 60:3
**matters** [2] 20:5 27:11
**mean** [11] 4:13 7:5 9:4 10:17 13:13 15:19 23:6 25:12 27:7 34:1 48:3
**meaning** [1] 25:23
**means** [4] 26:11 37:16 48:2 51:6
**meantime** [2] 10:19 33:19
**mechanism** [1] 20:13
**medical** [2] 6:10 28:8
**medicare** [1] 33:21
**medication** [1] 56:2
**meet** [1] 55:18
**meeting** [5] 16:22 17:2 18:14,19 53:22
**meetings** [1] 18:15
**mention** [1] 39:4
**mentioned** [2] 38:5 40:5
**met** [4] 3:18 4:5,24 28:21
**meyler** [140] 1:5,13 2:2,10,10,19, 23,24 3:1,5,13 5:16,24 6:17,19,22, 25 7:3,5,10,15,17 9:12 10:18 12:3 15:20 19:23 24:2,3,10,12,14,15,17, 19,22,25 25:5,15 27:10,13,18,23 28:1 29:3,6,12,14,19,23 30:7,19, 21 31:2,6,17,23 32:1,3,6,19,24 33: 2,7,11,19 34:12,21,24 35:2,5,20 36:1,3,9,14 39:23 40:18 41:2 42: 23,25 43:4,7,9,12,17 44:9,11,14, 16,19 45:4,12 46:5 47:1,4,9,13,18, 24 48:9,17,20,21,23 49:6,9,16,18 50:21,24 51:1,3 52:2,20,24 53:22 54:11,22,24 55:1,4,8,13,20,23 56: 1,11,15 57:7,12,16,19,25 58:6,12, 17,25 59:13,15
**meyler's** [5] 2:22 11:17 18:3 41:20 54:10
**microphone** [3] 13:2 37:4 38:21
**might** [8] 8:14 12:15 23:16 26:2 27:4 33:15,25 34:1,2,3,7,17 35:15 44:4 49:10 55:11,21 56:3
**miles** [1] 56:8
**military** [1] 43:20
**million** [1] 13:23
**milton** [1] 1:22
**mind** [4] 18:12 36:17 37:6 41:6
**minute** [2] 6:8 36:12
**misled** [1] 40:8
**mister** [2] 24:17 45:6
**mom** [1] 56:16
**moment** [1] 12:20
**moments** [1] 22:7
**money** [46] 7:2 8:18,23 12:12 15:4 16:13,16 17:16 21:16,17 22:5,10, 10 23:11,12 24:2 35:17,17 37:7, 15 39:18,23,24 40:3,20,22,25 41:5, 12,16,20,21,23 42:13,19 45:15 47:

16,23 48:8,13 50:11 54:10 55:17 56:4 57:5
**monies** [5] 5:3 6:13 27:15 28:5 34: 15
**monitor** [1] 36:15
**montego** [1] 56:16
**month** [7] 4:23 10:21 11:2,3 33:20, 22,24
**moreover** [1] 20:8
**morning** [1] 4:7
**most** [1] 13:15
**mostly** [1] 49:14
**mother** [2] 51:7 56:13
**motion** [6] 1:9 2:22 3:3 10:16 43:1 48:25
**move** [2] 45:9,21
**mris** [1] 43:25
**ms** [16] 3:6 6:5,6 25:17 28:2,12 31: 17,25 32:2,4,7 46:10 47:6 50:16 53:14,24
**much** [4] 14:2 15:10 27:5 47:20
**must** [2] 27:24,24
**myself** [2] 5:2 27:15

### N

**name** [2] 2:8,14
**names** [1] 2:9
**necessarily** [7] 15:16 18:10 25:8 29:10,24,25 49:17
**need** [8] 3:20 7:1,2 16:13 19:13 27:1 28:6 32:21 33:17 35:15,20 45:11 46:21 50:11 51:23 54:21
**needed** [2] 50:13,17
**needs** [8] 8:25 16:16 41:20,21 53: 1,7 57:7
**negative** [1] 11:2
**never** [18] 5:24 6:3 7:18 9:9,16 29: 16 30:5 43:14 45:15,15,15,18 46: 16 49:22 51:12 52:4,11 55:14
**new** [5] 1:15,19,19 9:12 56:4
**next** [1] 52:18
**nice** [2] 44:1 50:3
**night** [1] 5:4
**no-cost** [1] 57:23
**nobody** [1] 29:7
**nobody's** [2] 46:2 50:9
**nothing** [4] 20:7 27:2 33:24 48:18
**notice** [1] 10:16
**number** [6] 31:11 33:12,14 44:20 58:6,7
**ny** [1] 1:23

### O

**object** [2] 25:13 49:3
**obligated** [1] 30:12
**obviously** [1] 22:10
**ocean** [1] 1:14
**october** [1] 53:16
**offered** [1] 5:8
**office** [4] 51:21 57:14,21 58:4
**okay** [44] 2:18,21 6:18 7:7,20 8:8 11:20 24:19 25:15 27:10 30:11 35: 6 36:20 37:4,16 38:4,23 39:1,2 40:

7 41:8,22 45:6 46:22 47:1,4,8 48:
10 49:6 52:2,13,16 55:6,20 56:9,
10 57:7,20,25 58:6,15,24 59:6,12
**old** [1] 50:10
**once** [4] 12:12 24:20 31:8 35:8
**one** [19] 10:13 13:25,25 20:23 22:7
25:2,3 28:12 33:12 38:4,6 43:15
44:20 45:20 49:24 50:5 52:20 53:
1 55:23
**only** [19] 8:3 10:13 25:1 34:19,25
35:9,23 41:9,19,23 46:22 49:20,24
50:8,10,21 53:3 54:8 56:7
**opening** [1] 3:4
**opinion** [1] 11:13
**opposition** [1] 46:10
**order** [12] 8:25 16:3 26:17 28:14
29:11,13 30:23 33:14 35:8 38:23
48:25 54:3
**ordered** [1] 31:18
**other** [19] 4:23 5:4 21:4,6,7 22:9,
15 26:7,7,21 27:4 36:8,11 37:17
38:15 42:12 46:15 48:10 56:17
**out** [28] 5:4 9:5 15:5,5 16:1 19:20
22:12,22 24:4,6,9,15 26:4 27:3
30:24 31:8 34:1 36:7 39:24 42:20
48:7 51:11,19,22,23,25 53:24
**outcome** [1] 26:20
**outside** [1] 9:22
**outstanding** [1] 28:8
**over** [6] 3:18 4:19 6:13 18:15 27:2
55:4
**overwhelmed** [7] 28:17,18 35:21
37:1,5 46:12 50:4
**owe** [2] 18:17 44:2
**own** [15] 4:12,13 6:1 7:18 8:23 18:
17 22:13,13 25:20 26:12 28:22 39:
25 43:21 44:11 53:23
**owning** [1] 43:19
**owns** [2] 54:11,14

## P

**p.m** [1] 59:17
**paid** [26] 5:18 6:11 9:9,16,21,22,23
12:5 15:5,16,24 20:14 26:22 30:16,
24 31:4,12,19 32:17 36:7 45:3,16
51:5,5,6 53:10
**pamela** [1] 3:6
**papers** [5] 9:20,24 20:6 49:24 52:8
**paralyzed** [1] 6:9
**pardon** [4] 2:16,25 8:21 20:19
**parked** [2] 55:1,5
**parkway** [1] 1:14
**part** [3] 39:1,4 40:5
**participate** [4] 14:20 36:7 38:14
53:9
**participated** [1] 20:2
**particular** [2] 6:2 17:4
**particularly** [1] 56:22
**passed** [1] 46:12
**passes** [3] 14:9 21:3 41:10
**past** [1] 19:25
**pause** [2] 7:9 36:13
**pay** [50] 5:20,22 6:13 8:20,22 9:5,

17 12:2 15:4,7,18 17:23 19:20 21:
4 22:24,24 23:13,22 24:21 25:22
26:6,8 30:17 32:5,8 34:3,14 35:12,
13 38:14 39:8,19 40:3,19,20 41:6,
13,17,23 42:3,14,19 45:1 47:17 48:
3,5,6,16 56:23,24
**paying** [3] 24:18 33:21,23
**payments** [1] 28:7
**payout** [1] 34:9
**pays** [1] 32:9
**pending** [1] 46:23
**people** [8] 6:1 28:11 35:18 37:9,21
38:2,17 42:24
**per** [1] 10:21
**perhaps** [4] 13:10 17:17 23:9,19
**period** [1] 4:19
**perjury** [6] 45:5,23 50:1 52:5,11,15
**permission** [1] 54:6
**person** [8] 4:2 5:11 6:11 27:19 43:
24 45:14 46:6 57:14
**person's** [1] 50:8
**personal** [9] 9:14 11:8,10,13,21,
23 12:24 13:5,24 15:19 16:23,24
17:1,23 18:21 22:24 26:9,12,20 27:
3,7,8,11 31:10 32:8,13 34:7,9 35:
11,18 38:13 39:6,18,24 40:16,18,
19,19,22,25 41:5,16,24 42:2,17 46:
24,24 48:12 51:8,10 53:11,14 56:
22
**personally** [4] 13:10 33:5 41:21
42:20
**personnel** [1] 7:12
**ph** [1] 2:15
**phone** [3] 25:1 28:19 58:7
**phrase** [1] 52:25
**pi** [10] 11:6 15:13,20 17:9 23:12,13,
17 36:8 39:18 56:24
**pick** [2] 58:1,18
**picture** [1] 31:9
**place** [3] 20:13 49:11 57:22
**plaintiffs** [1] 13:14
**pleading** [1] 45:25
**please** [5] 2:4,9,14 36:12 43:21
**plus** [1] 42:6
**pocket** [1] 8:23
**point** [15] 4:11 7:24 8:17 9:2 11:16
14:4,7 21:15,17 41:20 52:18,20 54:
9 55:16 56:9
**poor** [1] 45:24
**position** [6] 17:14,16 20:10,17,20
52:20
**possession** [1] 19:7
**possibility** [3] 28:14 34:13 54:17
**possible** [4] 12:1 24:9,14 41:12
**possibly** [2] 15:2 34:10
**post-petition** [1] 14:3
**potential** [1] 23:10
**pouring** [1] 28:9
**pre-petition** [1] 53:14
**predicament** [2] 5:25 7:6
**predicaments** [1] 5:10
**prejudice** [1] 11:23

**present** [2] 16:14 19:22
**presented** [1] 17:3
**presumably** [1] 15:12
**previously** [1] 4:18
**price** [1] 26:8
**prior** [2] 10:16 28:8
**pro** [3] 1:13 9:21 51:20
**probably** [9] 17:6 31:22 34:11 45:
8,8,24,24 58:14 59:4
**problem** [5] 10:18 19:15 24:19 30:
10 54:12
**proceed** [4] 10:13,24 12:25 21:22
**proceeding** [1] 59:17
**proceedings** [4] 1:24 2:1 36:13
60:2
**proceeds** [4] 15:18 36:7 38:13 56:
24
**process** [3] 20:2 22:8 23:17
**processing** [1] 1:21
**produced** [1] 16:9
**project** [1] 51:23
**proof** [1] 14:16
**proper** [5] 5:9,11,12,17 29:3,6 33:
8
**properly** [1] 19:3
**properties** [2] 3:24,25
**property** [2] 19:6,8
**proposing** [1] 43:1
**protect** [2] 44:7 57:24
**proven** [1] 46:13
**provide** [1] 12:3
**provides** [1] 32:16
**punish** [1] 20:6
**purchase** [1] 57:5
**purely** [1] 10:25
**purpose** [1] 25:6
**pursuant** [1] 54:3
**pursue** [4] 25:23 27:11 29:2 57:4
**pursued** [1] 27:9
**pursuing** [1] 26:18
**put** [8] 3:16 5:10 7:6 9:20 15:25 17:
16 46:10 50:5
**puts** [1] 22:12
**putting** [1] 17:12

## Q

**qualified** [1] 38:8
**question** [4] 14:18 15:28 18:18 35:
10 48:19,22 54:19
**questions** [4] 4:8,8 56:17,25
**quick** [1] 21:23
**quite** [1] 17:12

## R

**raised** [1] 54:7
**raising** [1] 54:8
**ramifications** [2] 16:21 18:4
**rare** [1] 53:1
**rata** [1] 9:22
**rate** [3] 17:17 26:25 42:7
**rates** [1] 34:6
**rather** [3] 37:9,14 41:17
**rationality** [2] 13:9,19

**re** [1] 1:3
**read** [7] 18:16 19:5 43:4,5,6,8,10
**really** [6] 8:9 15:3 17:18,19 18:1
29:7
**reason** [4] 19:25 21:3 41:19 54:8
**reasonable** [4] 23:12 48:19,22 49:
5
**recall** [1] 4:10
**receive** [3] 32:13 35:19 40:15
**recommend** [2] 57:22,22
**record** [6] 2:8,9 17:15 27:20 51:4
56:20
**recorded** [1] 1:24
**recording** [2] 1:24 60:2
**recovering** [1] 28:19
**recovery** [4] 15:2,16 27:5 32:13
**refund** [1] 28:16
**regular** [1] 59:5
**reidy** [1] 1:20 60:4
**relatively** [2] 23:21 25:10
**relevance** [1] 18:2
**relevant** [1] 18:11
**relief** [2] 38:3,17
**relieved** [2] 59:8,10
**remain** [1] 31:22
**remaining** [1] 19:8
**remittance** [1] 31:19
**repay** [1] 28:6
**repeat** [1] 36:21
**reported** [1] 45:19
**represent** [3] 4:14,24 5:2
**required** [1] 54:2
**resolution** [2] 23:6 45:9
**respect** [7] 11:12 16:24 22:19,21
53:3 54:9 57:4
**respond** [2] 18:24 53:20
**responded** [2] 10:13 25:2
**responsibility** [2] 51:12,12
**responsible** [2] 6:11 27:19
**rest** [1] 56:25
**result** [2] 9:11 54:12
**results** [1] 31:11
**retain** [2] 53:14,23
**retaining** [1] 54:4
**retention** [1] 53:17
**return** [1] 20:1
**returned** [2] 53:20,21
**rightful** [1] 35:22
**rightly** [2] 25:18 26:23
**rise** [1] 59:16
**risk** [1] 16:12
**road** [3] 1:22 16:19 43:15
**robert** [3] 1:17 2:5,6
**roll** [36] 2:12,15,15,17,17,20 36:14,
15,22,25 37:5,13,20 38:4,10,16,22
39:1,4,9,13,17 40:1,5,10,13,18 41:
2,5,14 42:4,6,10,16,18,23
**rose** [1] 4:6
**route** [1] 43:14
**run** [1] 34:2

## S

**sally** [2] 1:20 60:4

**same** [3] 13:20 36:18 37:21
**sample** [1] 53:17
**saratoga** [1] 1:23
**saw** [2] 52:6,8
**saying** [33] 18:9,10,10,20 23:6 26: 23 27:7 28:15 33:3,7 35:24 36:15, 25 37:5,12,13,21 38:11 42:10,23 46:2,3,3,7 47:4,11 48:11 49:21 50: 1 54:15 55:18,21 56:2
**says** [5] 4:13 8:24 16:20 19:5 46:8
**scenario** [1] 21:19
**schedule** [3] 11:1 19:2,3
**schedules** [3] 10:21 52:9,10
**school** [1] 8:6
**scrape** [1] 34:8
**se** [2] 1:13 51:20
**second** [5] 41:15 45:20 46:12,20 49:24
**secured** [1] 26:13
**security** [1] 39:25
**see** [27] 8:11 12:12 14:11 15:1 19: 18,19 20:24 21:11 24:19 27:1 27: 25 29:22 31:14 39:12,23 40:3 41: 10,11,25 42:15 47:16,19 51:15,16, 16 57:11,21
**seeing** [1] 12:10
**seek** [1] 26:4
**seeking** [1] 26:19
**seem** [5] 23:14,16 45:13 59:8,10
**seems** [10] 6:5 17:21 18:25 19:11 20:7,8 22:8,11 32:19 46:14
**seen** [3] 11:11 57:14,17
**seizures** [2] 6:10 56:1
**sell** [1] 19:8
**send** [2] 24:5,7
**sense** [6] 41:1,18,19,22 42:21 50:3
**sent** [6] 4:14,18 24:17,23 25:16, 17 28:15 31:18 42:25 53:17
**separate** [1] 53:4
**serious** [1] 5:10
**seriously** [1] 3:14
**served** [1] 43:20
**service** [2] 1:21,25
**set** [2] 7:25 8:1
**settle** [7] 11:15,18,20 17:22 37:9 48:25 49:13
**settled** [7] 5:19,22 11:9 13:5 39:7 49:3 54:6
**settlement** [9] 9:11 12:25 13:9 37:7,14 40:16 48:5,7,14 49:1
**settlements** [1] 13:17
**settles** [1] 42:3
**settling** [1] 48:18
**several** [4] 19:23 52:19 57:3,3
**severe** [1] 16:13
**share** [2] 9:22 40:16
**she'd** [1] 58:14
**she'll** [1] 54:4
**she's** [3] 32:9 46:11 57:14
**sheet** [2] 19:4,5
**shirked** [1] 51:12
**short** [1] 4:22

**show** [2] 18:16 25:25
**showed** [1] 24:22
**shown** [1] 20:4
**shows** [2] 29:14 44:3
**sick** [1] 51:7
**signed** [1] 20:6
**silence** [1] 25:12
**simple** [1] 44:6
**since** [1] 49:6
**sir** [2] 2:11 43:14
**sit** [2] 36:3 47:9
**situation** [1] 51:25
**small** [4] 5:3,4 25:10 26:21
**solicit** [1] 10:8
**somebody** [4] 45:13 51:22 54:25 55:6
**someone** [4] 4:14 23:14 44:4 54:1
**sometimes** [2] 13:14,16
**somewhat** [2] 12:22 17:13
**sorry** [9] 3:14 16:15 17:11,11 27:7 36:21 37:2,12 55:3
**sound** [1] 1:24 60:2
**southern** [1] 59:2
**speaking** [1] 36:16
**speculate** [1] 18:6
**speculation** [1] 9:15
**spence** [11] 6:6 25:17 31:17,25 32: 2,4,7 47:6 50:16 53:14,24
**spent** [1] 54:10
**spoke** [3] 25:1 43:9,13
**spoken** [1] 11:8
**springs** [1] 1:23
**ssd** [3] 33:22,22 34:2
**stafford** [1] 51:5
**stage** [1] 23:11
**stages** [1] 14:1
**stands** [1] 23:25
**start** [2] 9:6 26:3
**state** [5] 2:8,9 11:7 12:24 13:5
**stated** [2] 37:6,13
**statement** [3] 3:4 11:10 13:25
**states** [2] 1:11 43:20
**stating** [3] 4:19 39:19 41:16
**status** [1] 4:20
**stay** [4] 9:19 17:20 36:12 37:18
**staying** [1] 42:22
**stays** [1] 17:22
**stem** [2] 56:3,5
**step** [1] 38:20
**steve** [2] 2:15,17
**still** [8] 5:18 14:16,23 38:14 40:15 45:13 47:22 53:8
**stipulation** [3] 24:5,7 41:16
**stop** [4] 7:13 11:15 57:13,20
**stopped** [2] 25:16 39:20
**stopping** [1] 48:17
**stories** [1] 4:25
**story** [1] 4:22
**street** [1] 5:5
**strongly** [1] 50:16
**structure** [1] 32:16
**structured** [2] 21:4,19

**student** [27] 14:15 21:13 22:19,21 25:24 26:5,6,18,19 27:3,6,7 30:15 34:17,23 35:15,18 36:6 38:7 40:6, 8,8 45:16 51:5 53:1,2,3
**submitted** [2] 9:24 10:14
**substance** [1] 18:25
**succeeded** [1] 22:18
**suffer** [1] 56:1
**suffered** [2] 6:9,10 49:19,23
**suffering** [2] 28:19 45:12
**sufficient** [8] 38:13 39:16 41:12, 23 45:1 55:17 56:23,24
**suggested** [1] 20:24
**suggesting** [1] 55:12
**support** [1] 10:14
**suppose** [2] 14:14 15:1
**supposed** [1] 25:21
**surmise** [1] 56:18
**surplus** [2] 17:24,24
**surprising** [2] 25:8,11
**survive** [2] 32:22 50:11

---

## T

**tactics** [1] 50:2
**tape** [1] 44:2
**tend** [2] 34:6 42:8
**terms** [1] 34:16
**testify** [2] 19:14 28:15
**themselves** [2] 6:8 19:16
**theory** [1] 36:16
**there'll** [1] 9:18
**there's** [9] 9:15 11:4,16 15:13 28: 14 30:16 32:6 34:23 35:16,17 42: 21 45:7 46:14 50:6 53:2 56:3
**thereabouts** [1] 17:17
**therefore** [2] 20:12 56:5,6
**they'll** [4] 11:20 15:15 44:1 53:22
**they've** [2] 11:19 16:3
**third** [4] 1:18 15:14,15,23
**though** [4] 19:2 20:2 22:20 23:18
**threaten** [1] 28:4
**three** [1] 5:6
**tied** [2] 7:5 33:19
**tightly** [1] 17:21
**till** [1] 39:6
**tired** [1] 41:6
**today** [5] 21:2 33:9 46:1,3 53:19
**took** [6] 3:18,19 4:11 16:1 51:9,9
**total** [3] 13:22 14:12 33:23
**totally** [2] 11:1 37:8
**toto** [1] 30:1
**touch** [1] 4:18
**towards** [1] 44:3
**transcriber** [1] 1:20
**transcript** [3] 1:9,25 60:1
**transcription** [1] 1:25
**transpired** [2] 3:8,11
**trial** [4] 11:9 13:7,8 59:7
**tried** [5] 5:20 10:6 12:24,24 13:5
**true** [9] 14:25 18:16 22:23 33:15 45:21 49:12 52:9,10 57:2
**truly** [1] 43:24
**trust** [1] 47:2

**trustee** [16] 1:16 2:5,7 4:1,6 10:23 11:22 19:7 26:11 28:24 30:25 39: 8,22 40:2 41:14 53:23
**trustee's** [3] 12:14,18 43:1
**truth** [3] 4:6,7 49:10
**truthful** [1] 45:21
**try** [5] 17:19 19:24 45:9 51:18,22
**trying** [9] 9:2 16:19 17:18,19 18:23 41:3 45:14 53:13 54:3
**tsatis** [3] 3:19,19 4:14,16,17,24 5: 6 6:4,6 19:13 27:23,25 28:13 29:4, 10 33:8,13,16 43:15 44:21 45:20 46:18 55:13
**turn** [2] 9:8 11:19
**twice** [1] 42:14
**two** [4] 4:11,16,23 6:9 33:15 43: 21 44:12 49:19 50:9 51:14 54:7
**typewrite** [1] 1:21

---

## U

**ultimately** [1] 48:7
**under** [8] 3:22 4:9,20 16:2 19:7 29: 16 42:18 45:25
**underlying** [1] 13:24
**understand** [20] 16:4,18,22 17:12 28:21 30:4 36:16,21 39:1 40:1 41: 8,25 42:6 43:18 44:6,22 46:5 49:7, 21 52:25 53:1,7
**understanding** [4] 17:14 21:18 37:17 47:10
**understood** [3] 42:4,10 56:9
**uneasy** [1] 43:23
**united** [2] 1:11 43:20
**unless** [6] 23:12 25:25 30:22,24 38:8 39:22
**unlikely** [1] 12:23
**unsecured** [1] 8:10
**unsympathetic** [1] 16:19
**until** [9] 9:17 14:9 31:19 34:8 41: 10 58:4,11,15
**untruthfulness** [1] 45:23
**unusual** [2] 13:7,8
**up** [16] 3:15 6:3 7:5 20:4 27:2,20 32:14 33:19 36:22 42:12,14 44:12 46:10 48:4 51:4 54:15 55:12,15,18
**using** [2] 39:24 46:24
**usual** [2] 12:25 13:4

---

## V

**vacated** [1] 50:16
**value** [1] 53:25
**verbally** [2] 4:25 50:5
**verbatim** [1] 54:2
**view** [2] 20:16 41:20
**violations** [2] 50:6,7
**vision** [1] 54:12

---

## W

**wait** [15] 6:8 14:9 19:17 34:8 35:11 37:14 39:6,10,11 41:10 51:14,15 57:3 58:11,15
**waiting** [2] 26:20 42:13
**walked** [1] 51:10

---

**wanted** [12] 5:24 7:11 8:18 13:18
27:13,14,14 39:19 40:22 41:5 43:
14 50:16
**wants** [19] 9:12,18,20 15:3 16:10
21:3,15,17,17 22:10,12,15 23:7 38:
16 39:3 40:20 42:24 43:22 58:7
**watkins** [1] 1:17
**way** [18] 5:23 10:17 11:7,12 17:25
30:16,20 31:12,13 34:25 35:22 36:
24 41:9 42:8 45:1 46:22 47:20 49:
22
**wend** [1] 11:11
**wended** [1] 11:7
**whatever** [10] 15:20,23 17:23 20:9
26:8 27:15 31:10 32:13 43:21,22
**whatsoever** [1] 24:21
**where'd** [1] 57:5
**where's** [1] 19:4
**whereas** [3] 17:20 27:2,4
**whether** [17] 12:4 13:17 16:10 17:
14 19:19 30:2 31:12 33:14 35:10,
11,12,16 41:11 47:16 49:5,13 54:1
**who's** [4] 13:10 23:14,15 46:6
**whoever** [2] 36:17 39:19
**whole** [3] 25:6 50:10 51:24
**whomever** [1] 54:3
**why'd** [1] 27:25
**will** [20] 3:3,22 4:1 6:13 8:15 9:21,
23 11:14,15,20 12:5,12 22:17 30:
18,18,18 32:17 45:15,16 51:21
**willing** [2] 23:10 28:16
**wish** [1] 47:21
**within** [3] 6:7,12 51:6
**without** [3] 12:17 20:13 54:6
**witness** [3] 2:20 13:25 24:3
**wonder** [2] 54:11,14
**wonderful** [1] 13:15
**wondering** [1] 56:12
**word** [2] 1:21 50:22
**words** [5] 36:11 37:17 42:12 50:1
52:14
**work** [8] 24:4,6,9,15 46:6,9 50:7 51:
21
**worked** [2] 45:16 51:6
**worth** [2] 23:22 30:14
**wow** [1] 11:17
**write** [3] 10:10 32:10 45:24
**writing** [2] 5:1 50:6
**written** [1] 11:22
**wrongly** [1] 44:23
**wrote** [3] 41:15 53:16,19

## Y

**year** [2] 6:14 55:4
**years** [8] 11:9,11 18:15 31:11 50:
10 51:4 57:3,3
**yield** [1] 9:11
**yields** [1] 31:11
**york** [4] 1:15,19,19 56:4
**young** [1] 55:10
**yourself** [2] 25:19 33:5